In re John Bryce
BILLINGSLEY, Jr., Debtor.

Betty SMITH, Plaintiff,

v.

John Bryce BILLINGSLEY,
Jr., Defendant.

Bankruptcy No. 386–32152 M-7.
Adv. No. 386–3931.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

June 22, 1987.

Grant Q. Poynor, Dallas, Tex., for plaintiff.

Roger J. Allen, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

This case was tried March 3, 1987.

The question involved in this case is the dischargeability, under 11 U.S.C. § 523(a)(5), of provisions in a property settlement agreement incident to divorce.

These are difficult cases from both sides. There are legitimate issues that need to be tried. In the process of trial, the parties have to dig up and relive painful memories. Furthermore, many times the parties in this Court, because of the nature of the issues, take positions which may or may not be consistent with divorce court positions. The courts have to sift through these positions and the prior status as relived many years later to determine the ultimate issue, to wit: "the reality of the nature of the payments" as described in *Matter of Benich*, 811 F.2d 943, 945 (5th Cir.1987). *See also, Forsdick v. Turgeon*, 812 F.2d 801 (2nd Cir.1987), CCH Bankruptcy Law Reports ¶ 71720.

■ The determination of whether the claim is for support obligation or part of the property settlement is a question of federal bankruptcy law, not state law, although state law concerns are not to be totally ignored. *Erspan v. Badgett*, 647 F.2d 550, 554 (5th Cir.1981). *Williams v. Williams*, 703 F.2d 1055, 1056 (8th Cir. 1983); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984); *In re Holland*, 48 B.R. 874 (Bankr.N.D.Tex.1984); *In re Fox*, 5 B.R. 317 (Bankr.N.D.Tex.1980); *Moses v. Moses*, 34 B.R. 378 (Bankr.S.D.Tex.1983).

■ The label given to the obligation as part of the divorce agreement is not necessarily binding upon the Bankruptcy Court [*Williams v. Williams, supra; In re Markizer*, 66 B.R. 1014, 1018 (Bankr.S.D. Fla.1986) ], but it is one of the factors to be considered. *In re Holland, supra*. However, the written agreement between the Debtor and former spouse can constitute persuasive evidence of whether Debtor's obligation to spouse is a nondischargeable support obligation. *In re Yeates*, 807 F.2d 874 (10th Cir.1986).

■ The primary issue in determining whether the obligation is for support and maintenance or a part of a property division is the intent of the parties [*In re Coffman*, 52 B.R. 667 (Bankr.D.Md.1985) ], *i.e.*, whether the obligation was intended as an equalization of property rights or support and maintenance. *Matter of Woods*, 561 F.2d 27 (7th Cir.1977). Because this is subjective, the courts have established a list of factors to be considered in determining the intent of the parties. These factors include:

A. The length of the marriage.

B. Whether there are minor children in the care of the creditor spouse.

C. The parties' standard of living during marriage.

D. Whether the creditor spouse had shown, at the time of the divorce, a need for support. Whether the former spouse was shown, at the time of the divorce, to have suffered in the job market, or was otherwise disadvantaged because of any dependent position held in relation to the debtor during the marriage.

E. The financial resources of each spouse, including income from employment or elsewhere.

F. Whether the payments were made periodically, or over an extended period, or in a lump sum.

G. Whether payments were fashioned in order to balance the disparate income of the parties.

H. The ages, health, work skills, and educational level of the parties.

I. Whether the terms of the settlement agreement indicated that the agreement was support, rather than property division.

*In re Coffman, supra; Holland, supra,* at 876.

A Chapter 7 petition was filed by John Bryce Billingsley, Jr. ("Debtor" or "Defendant") on June 24, 1986.

■ Pursuant to a divorce decree entered in the Domestic Relations Court of Midland County, Texas, on December 21, 1976, in Cause No. DR 6880, wherein the Plaintiff and Defendant were divorced, the Defendant agreed that he would pay the Plaintiff the sum of $1,750 per month for a period of twelve months, then he was to pay the sum of $1,500 per month for eleven consecutive years. A copy of the divorce decree and the property settlement agreement were offered into evidence.

By reason of the non-payment of the payments provided for in the exhibits, the Plaintiff filed suit against the Defendant, and, on April 3, 1985, secured a judgment against him for $19,442.97, with interest at the rate of 10%.

In looking at the property settlement incident to divorce, the husband has agreed to pay wife as child support $300 per month per child (three minor children), until each minor completes his or her high school education, or until the age of eighteen. Husband additionally agrees to pay to the wife "as alimony", over a twelve-year period "for her support and maintenance", the sum of $1,750 per month for twelve months and then $1,500 per month for eleven years, "[i]n recognition of the general obligation of support of the husband to the wife, arising out of the marital relationship, and by reason of the inalienable nature of the bulk of the parties['] community property". The total contracted payment over the twelve-year period was $219,000.

The agreement further provides that the wife shall not have the right, or power, or authority to assign, transfer, pledge, hypothecate, or otherwise alienate or anticipate her rights to the alimony payments until such alimony is paid to her, and further, that the obligation of the husband to pay alimony to the wife shall wholly cease and terminate upon the death of the wife, or the payment of the last payment contemplated thereunder, whichever event shall occur first.

From the language of the agreement, it would appear that the payments and indebtedness at issue were intended as actual alimony, support and maintenance of the wife, although the Debtor argued that the amounts were in the nature of equalization of property rights due to the inalienability of the bulk of the community property, and, therefore, that same were dischargeable.

The Court finds that these debts are non-dischargeable, and that they are actually in the nature of alimony, support and maintenance.

...While the intention of the parties is the ultimate question, even the uncontradicted testimony of one of the spouses is not decisive. The trial court is entitled to weigh the credibility of the witness, the worth of the testimony when weighed against the language of the agreement, the actual situation of the parties at the time when the agreement was made, and any other evidence that may help to determine the reality of the nature of the payments....

*Matter of Benich, supra.*

The parties' children were at the ages of seven, fourteen, fifteen, and eighteen at the date of the divorce. It was discussed between the parties before the divorce that twelve years would be needed before the youngest child reached eighteen. The $1,500 per month was to run the household (according to the wife's testimony); she received the house and was obligated on the house payments, and a car that the husband paid for; she likewise received the furniture.

It was undisputed that the wife has been paying the taxes on all the "alimony" received, and the husband has been allowed to take all "alimony" payments as a deduction on his tax return. Neither party addressed possible estoppel arising from the parties' course of conduct post-divorce.

The wife has remarried, and her new name is Smith. She has owned a dress shop for eight years. At the divorce, she had four children, three of whom were

living at home and were minors. The husband agreed to pay $300 per month child support. He voluntarily paid more than the contract amount. He paid her $100 per month extra child support for a period of time.

During settlement negotiations before the divorce, the Debtor told his wife that he would take care of her and the children.

Allegedly, at the time of the divorce, the assets of the community were speculative and down the road, i.e., lots of value, but it was tied up in non-liquid assets. During divorce negotiations, the wife told the Debtor what she needed per month until the youngest child reached eighteen. The figures on the inventory and appraisal signed by the husband showed assets of $217,617.50 and non-secured liabilities of $60,000, with a net worth of $157,617.50.

The parties had been married when the wife was eighteen, and, at the date of divorce, she had had no outside jobs, had no work skills, and had only completed two years of college. The $100 per month extra which she received for her daughter Sheri was because of a tutor, dance lessons, and horseback riding.

The Debtor testified that he's paid $139,500 in contractual alimony, and if he paid the full amount of $219,000 contractual alimony, it would be $79,500 more that he would owe. He further testified that he has paid child support in excess of that ordered by the Domestic Relations Court. The testimony was convincing that he paid amounts in excess of the child support ordered.

The husband produced worksheets from his domestic relations attorney's file. They were prepared by the Debtor in his accounting office allegedly at the time of the divorce. They were a summary of assets and liabilities at year end 1975. These worksheets were apparently internal documents between the Debtor and his attorney only. The Debtor testified that these figures were actually the figures that were used in the property settlement agreement, and because he was an accountant, he structured it as alimony so that he could deduct it, but that he really used fair market value in the division of property (which was described as alimony). According to the Debtor, the parties allegedly used fair market value, rather than liquidation value, because it more accurately reflected the true value of the parties' assets. The Debtor testified that the payment time period was to attempt to structure the parties' transaction for IRS purposes, and that the words "alimony and support" were to allow him a deduction. The largest asset he received was his share of his accounting firm which he valued at $340,000, and which was valued on the Domestic Relations Court inventory and appraisement at $60,000, which he contends was a cost valuation. He was seventeen years old at the marriage and the parties were married for eighteen years. For the most part, the Debtor and his wife did not negotiate their divorce agreement person-to-person. They negotiated through their attorneys. The Debtor insisted on the words "alimony and support" in the settlement agreement for IRS purposes.

In a 1984 court transcript, he testified that the parties had a twelve-year plan for his daughter Sheri.

The cost of the CPA firm was $60,000, and $280,000 was the value of the good will, supposedly. In 1978, he sold his interest in the CPA firm for $700,000.

The foregoing obligations in the property settlement agreement are not discharged, including the judgment in Cause No. 32995 from Midland County, Texas. Judgment will be entered in accordance with the foregoing opinion.

■ Plaintiff is further entitled to non-dischargeability of her attorney fees in the amount of $2,375 through the trial of this cause.

The Court reserves the right to make further findings of fact and conclusions of law.