In re David A. DAVIDSON, Debtor.

Nancy Y. DAVIDSON, Appellant,

v.

David A. DAVIDSON, Appellee.

Bankruptcy No. 388–31508–RCM–7.

Civ. A. No. 89–2892–H.

United States District Court,
N.D. of Texas,
Dallas Division.

Dec. 11, 1990.

Michael Pezzulli, Mary Good Noble, Michael Pezzulli & Associates, Dallas, Tex., for appellant.

Regan M. Martin, Dallas, Tex., for appellee.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Appellant appeals from the bankruptcy court's August 30, 1989 Final Judgment and Amended Memorandum Opinion. 104 BR 788. Before the Court are the Appellant's Brief, filed January 31, 1990, and Appellee's Brief, filed September 17, 1990. Although granted permission to file a Reply Brief, the Appellant elected not to do so.

### Standard of Review

The bankruptcy court's findings of fact are reviewed for clear error; issues of law are decided *de novo*. *See In re Texas Research, Inc.*, 862 F.2d 1161, 1163 (5th Cir.1989).

### Facts

The Appellant-wife and the Appellee-husband were married on September 9, 1977. During the first part of their marriage, the couple's lifestyle was modest. However, during the last two years of the marriage, their income increased substantially, and their lifestyle became more extravagant. Appellant did not work during the early years of the marriage, but later helped Appellee develop Davidson Real Estate Company. The couple did not have any children.

In 1982, the couple separated. On March 29, 1983, they entered into a Marriage Settlement Agreement, ("Agreement"), and on March 30, 1983, a Decree of Divorce was entered, granting them a divorce pursuant to the Agreement. Article VIII of the Agreement is entitled "Support of Spouse" and contains a list of payments to be made

to Appellant. Under paragraph 8.01(A), there are six subparagraphs listing "Periodic Payments" the Appellee was obligated to make to the Appellant. Two of those are at issue here:

1. The sum of $1,583.00 each and every month beginning on the 1st day of May, 1983 and continuing for one hundred twenty (120) subsequent months, payable on the first day of each month thereafter, for a total period of 121 months;

2. The sum of $6,149 each month and every month beginning on the 1st day of May, 1983, and continuing for one hundred twenty subsequent months, payable on the first day of each month thereafter for a total period of 121 months.

The requirement to make these two types of payments was to terminate either upon the payment of the one hundred twenty-first installment, or upon the Appellant's death, which ever came first. Payment of the other four types of payments was to terminate upon the Appellant's death, or upon the sale of all property owned by a specified joint venture, which ever came first.

Section 8.05 of the Agreement provides: The support obligation of Husband embodied in the provisions of this Article VIII is unrelated to the division of marital property which is provided for in the other provisions of this Agreement and is not intended in any way to constitute a form of payment to Wife for any rights or interest she may have in the marital properties of the parties.... Said obligation is undertaken by Husband in recognition of his general duty of support . . .

The Appellee made the two types of payments at issue here through July 1986. The Appellee labelled his checks for the payments "alimony" and deducted the payments as alimony on his income tax returns. The Appellant declared the payments as income from alimony on her income tax returns, and accordingly paid tax on that income. The Appellee has not made any payments since July 1986.

Other portions of the Agreement concern the couple's property: under Article III, the parties agreed to enter into a limited partnership agreement with regard to two joint ventures; Article IV is entitled "Property of the Parties" and concerns the individual property of each of them; Article VI, called "Division of Marital Property," distributed the marital property between the parties. The Appellant also entered into a Stock Redemption Agreement with Davidson Realty Company, whereby stock in the company was converted to cash.

On March 16, 1988, the Appellee filed a Voluntary Petition for Bankruptcy. On July 1, 1988, the Appellant filed a Complaint to Determine Dischargeability of Debts and Objecting to Discharge, Adversary Proceeding No. 388–3468, to determine whether the debts of Appellee were exempt from discharge under 11 U.S.C. § 523(a)(5). That section concerns alimony and similar post-divorce support.

Following a trial held on various dates between March 22, 1989 and April 18, 1989, the bankruptcy court entered a Memorandum Opinion and Order finding: (1) the subparagraph 8.01(A)(1) payments of $1,583 to be interest in the Appellee's pension profit sharing plan and therefore dischargeable; and (2) the $6,149 payments in subparagraph 8.01(A)(2) to be support and not a property settlement and therefore non-dischargeable.

The parties each filed a Motion to Amend the Findings of Fact and Conclusions of Law.[1] On July 14, 1989, the bankruptcy court held a hearing on these and other motions. On August 30, 1989, the bankruptcy court entered its Amended Memorandum Opinion, withdrawing the April Memorandum Opinion and Order and finding that: (1) the subparagraph 8.01(A)(1) monthly payments of $1,583 were intended as interest in the pension profit sharing plan and therefore dischargeable; and (2) the subparagraph 8.01(A)(2) monthly payments were intended for property equalization and were therefore dischargeable. On September 6, 1989, the Appellant filed a Motion to Amend Findings of Fact, and in

---

**1.** Appellant's Motion was filed on May 1, 1989, and Appellee's was filed on May 7, 1989.

Addition or the Alternative, Motion to Amend the Judgment, and in Addition or in the Alternative Motion for New Trial. That Motion was overruled on September 18, 1989.

### Issues on Appeal

11 U.S.C. § 523 provides:

(a) A discharge under section 727, 1141,,[sic] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ...

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

On appeal, Appellant argues that the bankruptcy court erred by:

I. concluding that the payments at issue were not alimony, maintenance or support under 11 U.S.C. § 523(a)(5)(B) and therefore dischargeable;

II. not concluding that the Appellee waived his right to allege that the payments at issue were not in the nature of alimony, maintenance or support;

III. not concluding that the Appellee was estopped from arguing that the payments at issue were not alimony, maintenance or support;

IV. concluding that the payments constituted a division of property;

V. concluding that the Appellant had the ultimate burden of proof on the question of whether the payments were alimony, maintenance or support;

VI. not concluding that once the Appellant made a prima facie case that the payments were in the nature of alimony, maintenance or support, the burden of proof shifted to the Appellee to prove that the payments were dischargeable debts;

VII. concluding that the Appellant failed to meet her burden of proof on the question of whether the payments were in the nature of alimony, maintenance or support;

VIII. granting the Appellee's Motion to Amend, reversing its decision as to the $6,194 payments, denying Appellant's Motion to Amend and for alternative relief, and failing to determine the attorneys fees in connection with the adversary proceeding and appeals therefrom to which the Appellee is entitled;

IX. concluding that the Appellant was not entitled to recover attorneys fees in connection with the adversary proceeding and appeals therefrom.

The parties treat issues I, II, III, and IV together; issues V, VI and VII together; and issues VIII and IX together. The Court will group the issues the same way.

### Issues I, II, III, IV

■ Appellant argues that the bankruptcy court erred in concluding that the payments constituted a division of property, (IV), and were not in the nature of alimony, maintenance or support, (I). The Appellant also argues that the Appellee is precluded, by either estoppel, (III), or waiver, (II), from arguing that the payments were not in the nature of alimony, maintenance or support.

■ In determining whether the payments were in the nature of support, the Court cannot rely upon the way in which the payments were characterized in the Agreement; rather, the Court must examine the substance of the Agreement and the parties' intent. *See In re Nunnally,* 506 F.2d 1024 (5th Cir.1975); *In re Billingsley,* 93 B.R. 476, 477 (Bankr.N.D.Tex. 1987). Courts must make the fact specific inquiry of "examin[ing] the agreement and all circumstances surrounding the creation of the liability" to determine if the obligation is in the nature of support. *In re Fox,* 5 B.R. 317 (N.D.Tex.1980).

■ Courts may look at a number of factors to determine the parties' intent. They include the: (1) length of the mar-

riage; (2) whether or not there are minor children to be supported; (3) the parties' standard of living during the marriage; (4) whether the disparity in job skills between the parties suggested a need for support; (5) the spouse's respective financial resources; (6) the length of time over which the payments were made and the events that trigger termination; (7) whether the payments were made to balance disparities between the parties' incomes; and (8) the label used to describe the payments in the divorce agreement. *Billingsley,* 93 B.R. at 477; *Fox,* 5 B.R. at 321; *see also In re Coffman,* 52 B.R. 667, 674–75 (Bankr. D.Md.1985). None of the factors alone is determinative. *In re Elder,* 48 B.R. 414, 417 (Bankr.W.D.Ky.1985).

The bankruptcy court found that when negotiating the Agreement, the parties did not discuss the amount of money the Appellant needed for support; rather, the parties discussed the division of the couple's assets and the value of those assets. More specifically, the bankruptcy court found that the $1,583 payment was attributable to the Appellant's share in the company's pension profit sharing plan, and the $6,149 payment was derived from the total of the income and taxes arising out of a particular real estate transaction. While witnesses testified that the figures were generally tied to assets, they could not explain the precise way in which the figures were calculated. Also important to the bankruptcy court was that the payments here were so excessive as to be unreasonable under traditional concepts of support. The bankruptcy court concluded that in reality, the payments were part of the division of property.

The bankruptcy court also distinguished the payments here from those in *Bunch v. McCartt,* 3 Tex.Bkr.Rep. 68 (Bankr. N.D.Tex.1988), where the bankruptcy court found that the property settlement was in the nature of support, on the ground that the property settlement here was so large that it could not be for the Appellant's support.

This Court agrees. There was significant evidence showing that the payments were tied to the couple's assets, but no evidence showing that the payments were tied to the sums the Appellant needed for support. Moreover, this case is distinguishable from those upon which Appellant relies. As the bankruptcy court found, the settlement in this case differs significantly from that in *McCartt.* There, the $1000 monthly payments were to be made for 15 years, giving the wife enough time to obtain an education after the children had completed school.

The payments here stand in sharp contrast: the amount of the payments were not round numbers, suggesting that they were not estimates of the amount needed for support, but instead generated through some calculation; the payments were to occur over ten years and one month, an unusual period of time for most purposes, but crucial to ensuring that the payments would be tax deductible; and the payments were treated in two separate provisions of the Agreement, implying that they were derived through two separate processes.

In addition, unlike *Billingsley,* upon which the Appellant relies and where the court found the payment to be in the nature of support, there is no evidence here that the amount of money the Appellant needed was communicated to the Appellee. *Billingsley,* 93 B.R. at 478–79.

■ The primary emphasis is on intent of the parties, and that intent can be determined based on factors outside of contract. Accordingly, that the Agreement characterizes the payments as support is no bar to finding that the payments are not in the nature of support. The Appellee is therefore not estopped from asserting that the payments were not support merely because he signed that Agreement.

■ Nor does the signing of the Agreement, coupled with the labels on the checks and the income tax deductions, demonstrate an unequivocal intent not to assert a claim. The Appellee therefore did not waive his right to assert that the payments were not in the nature of support. *See Weisbart & Co. v. First Nat. Bank,* 568 F.2d 391, 396 (5th Cir.1978).

The bankruptcy court did not err in concluding that the payments were in the nature of a property division and not in the nature of support. Similarly, the bankruptcy court did not err in concluding that neither waiver nor estoppel barred the Appellee from asserting that the payments are not in the nature of support.

### Issues V, VI, VII

■ The bankruptcy court held that the Appellant had the burden of proof under § 523(a)(5), that the Appellant had the ultimate burden of persuasion, that the Appellant's prima facie case was rebutted by Appellee, and that the Appellant failed to meet her ultimate burden of persuasion. Appellant argues that once she established a prima facie case, the ultimate burden of persuasion shifted to Appellee.

■ A plaintiff under 11 U.S.C. § 523 has the ultimate burden of proof. *See In re Calhoun*, 715 F.2d 1103, 1111 (6th Cir. 1983); *Melichar v. Ost*, 7 B.R. 951, 954 (D.Md.1980); *In re Elder*, 48 B.R. at 416; *In re Benich*, 811 F.2d 943, 945 (5th Cir. 1987).

Accordingly, the bankruptcy court did not err in concluding that the burden of proof remained with the Appellant, that the Appellee sufficiently rebutted the Appellant's prima facie case, and that the Appellant failed to meet her ultimate burden.

### Issues VIII and IX

■ In Issues VIII and IX, Appellant argues that the bankruptcy court erred in failing to award her attorneys fees. The Appellant recognizes that the case law on attorney's fees in an adversarial proceeding is conflicting, but argues that here, where the Agreement specifically provides that in the event of default, the "defaulting party shall pay all reasonable attorney's fees, expenses and costs incurred," Section 10.3 of Agreement, the attorney's fees provision is "so intertwined with the obligation to support as to be in the nature of support or alimony" and should be excepted from discharge. *See In re Bell*, 61 B.R. 171 (Bankr.S.D.Tex.1986).

Here, the Appellant has not prevailed and has not shown that the payments are in the nature of support. Accordingly, she is not entitled to attorney's fees.

### Conclusion

The August 30, 1989 Final Judgment of the bankruptcy court is AFFIRMED.

SO ORDERED.