### In re Gerard Scot JOHNSON, Debtor.

### Gerard Scot JOHNSON, Plaintiff,

### v.

### Irene ARCELUS, Defendant.

### Bankruptcy No. 92–20078–M–7.
### Adv. No. 92–2023–M.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 20, 1993.

---

## MEMORANDUM OPINION

MANUEL D. LEAL, Chief Judge.

Debtor, Gerard Scot Johnson filed this adversary against his former wife Irene Arcelus seeking this Court's determination that the alimony obligations to his former wife as ordered by a state court in their final decree of divorce are dischargeable in bankruptcy.

A trial of the issues in Johnson's complaint was held. After careful consideration of the pleadings, evidence, the credibility of the witnesses and applicable law, this Court rules that the alimony obligations set forth in the divorce decree are nondischargeable under § 523(a)(5). This Memorandum Opinion con-stitutes the Court's Findings of Fact and Conclusions of Law regarding the Court's ruling on this subject.

Johnson claims that his alimony obligations under the final divorce decree reflect a property division and are not in the nature of support, maintenance or alimony for Ms. Arcelus. Arcelus disagrees and contends that Johnson's obligations constitute alimony, maintenance and/or support under 11 U.S.C. § 523(a)(5) and are nondischargeable as debts in Johnson's Chapter 7 bankruptcy. 11 U.S.C. § 523(a)(5) states in pertinent part:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ...

11 U.S.C. § 523(a)(5).

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This case is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### BACKGROUND

Johnson and Arcelus are both citizens of Mexico now living in the United States. They were married on December 8, 1979 in Mexico. The parties moved to the United States in 1982 so that Johnson could continue his medical education and also begin the practice of medicine. During their marriage, Arcelus received money from her father and used these funds to support Johnson, their daughter and herself. Johnson filed for divorce from his wife on November 30, 1989.

Prior to the entry of the Final Decree of Divorce, the parties entered into agreed temporary orders whereby Johnson agreed to pay Arcelus $3,000 per month.

In 1991, the state court signed the Final Decree of Divorce. Under the terms of the final decree, Johnson was to pay Arcelus $400,000 in contractual alimony for 10 years, payable in monthly installments of $1,500 for the first 18 months and $3,656.96 for the remaining period. Johnson and Arcelus

agreed to the terms of the final decree and signed it. The final decree also provided that Johnson was to repay a debt owed to Texas State Bank, which was secured by two certificates of deposit. Between $85,000 and $90,000 of the $122,000 certificate belonged to Arcelus, with the balance belonging to her sister Maria Angeles de Fernandez. The certificate of deposit secured a note issued by the Texas State Bank. The credit line established by the note was used by both Johnson and Arcelus to pay their living expenses and also to pay the startup costs of Johnson's medical practice.

The $400,000 of contractual alimony was agreed upon during a discussion between Arcelus and Johnson. Arcelus testified that in agreeing to this amount she took into account several factors including: the present age of her daughter, the length of time before her daughter attended college, her estimated monthly expenses, and the $85,000 to be released by Texas State Bank to Ms. Arcelus upon Johnson's repayment of the debt to the Bank.

Johnson maintains that the $400,000 constituting contractual alimony in the Final Decree was intended to be repayment of the money which he claims was loaned by Arcelus' father to Arcelus during the course of the Arcelus/Johnson marriage. Johnson contends that he promised his then spouse Ms. Arcelus that he would pay back double the $158,000 amount received from Ms. Arcelus' father for a total of $316,000. According to Johnson, this amount plus interest and the time value of money yields the $400,000 agreed to as contractual alimony.

Ms. Arcelus disputes Johnson's contention that the $400,000 constituting contractual alimony in the Final Decree is intended to be repayment of the money obtained from her father. Arcelus claims that the $158,000 received from her father during her marriage to Mr. Johnson was a gift and not a loan.

### DISCUSSION

Federal law rather than state law determines whether divorce related claims are "support obligations" or a "property settlement" in deciding whether an obligation is dischargeable in bankruptcy. *In re Billings-*

*ley,* 93 B.R. 476, 477 (Bankr.N.D.Tex.1987). The label placed on an obligation established in a divorce decree is not necessarily binding in bankruptcy court. *Id.* Additionally, the Bankruptcy Code requires the bankruptcy court to determine the true nature of the debt, regardless of the label placed on it by the parties agreement or the state court proceeding. *Id.* In doing so, the bankruptcy court may consider extrinsic evidence to determine the real nature of the underlying obligation in order to determine dischargeability. *Id.*

The intent of the parties is a primary factor in determining whether an obligation in a final decree of divorce is for support and maintenance, or if it is a property division. *Id.* In evaluating intent, the bankruptcy court is concerned only with the intent of the parties at the time of their alimony/property division agreement. *Matter of Davidson,* 947 F.2d 1294, 1296 (5th Cir.1991). The relevant inquiry is the intent of the parties at the date of divorce, not their intent at the time of their marriage. Such a determination precludes any discussion of taking notice of the law of Mexico and the doctrine of *Bienas Separados.* Johnson urges that this Court take judicial notice of the Mexican legal doctrine of *Bienas Separados.* An interpretation of this doctrine reveals that the properties of the parties are to be treated as "separate and not to be used for community needs." The parties were married under the terms of this doctrine in Mexico. However, *Bienas Separados* relates to the intentions of the parties at the time of marriage and not to their intentions 10 years later at the time of divorce.

*This court is concerned with the issue of whether the labelling of the settlement in the Final Decree as "alimony" by the state court was in name only. If so, this Court is deeply troubled by the assertion by one of the former spouses that Johnson and Arcelus would deliberately and intentionally lead a state court into signing a judgment incorporating a property settlement agreement which falsified the parties' intentions in order to avoid the consequences of bankruptcy law.*

■ The burden of proving nondischargeability of a debt is upon the person who asserts its exemption from discharge. *Benich v. Benich*, 811 F.2d 943, 945 (5th Cir. 1987). The burden is upon Irene Arcelus to prove that this debt is nondischargeable and exempt as alimony. She must demonstrate that the intent of the parties in signing the Final Decree is reflected in the plain language of the writing.

■ The following factors are usually considered in determining the intent of the parties in divorce situations:

1. Length of the marriage.
2. Whether there are minor children in the care of the creditor spouse.
3. The parties' standard of living during the marriage.
4. Whether the creditor spouse demonstrated a need of support at the time of the divorce.
5. Financial resources of each spouse.
6. Manner of payment—over time or in a lump sum.
7. Whether payments were fashioned in order to balance the disparate income of the parties.
8. The ages, health, work skills and educational level of the parties.
9. Terms of the divorce decree.

*Id.*

■ The marriage between the parties lasted for approximately 10 years. They have one minor daughter who is in the care and custody of the mother Irene Arcelus. The parties maintained a high standard of living during their marriage. Such a standard was sustained in part by the money Ms. Arcelus received from her father, and by Dr. Johnson's salary. Further, Irene Arcelus demonstrated a need for support by giving this Court a breakdown of both her daughter's and her own needs. Ms. Arcelus also received temporary support from Dr. Johnson pursuant to an Agreed Temporary Order prior to the signing of the final divorce decree. The Agreed Temporary Order provided that Dr. Johnson pay Ms. Arcelus $3000 in spousal and child support. Generally, a family court orders temporary support to a spouse to ensure that family support obligations stay untouched pending the outcome of a divorce.

In the instant case, neither of the parties possessed any significant amount of joint property to divide. Although Arcelus does possess an inheritance from her father, she has no independent income of her own. Arcelus is a housewife without a college degree or any marketable skills that would enable her to obtain gainful employment. On the other hand, Johnson is a pediatrician with a growing medical practice. Additionally, the payments agreed to by Arcelus and Johnson in the Final Decree of Divorce were not to be in lump sums. Rather, they were to be periodic with the $400,000 in contractual alimony payable in monthly installments over a period of ten years. Further, the terms of the Final Decree of Divorce unequivocally state that the sum of $400,000 is payable as alimony. Application of the listed factors strongly indicates that the payment agreed to by the parties in the final decree was intended to be alimony.

■ Additionally, there exists a presumption that the final decree and contracts signed by all of the parties mean what they say, and the instruments are strong evidence of what the parties intended. Consequently, the writing will be construed in such a manner as to reach a reasonable result consistent with the expressed intent of the parties. *Temple–Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex.1984). Because the final decree expressly references debtor's obligations to defendant as "alimony" the instrument will not be interpreted to the contrary unless the evidence obviously shows it to be a mere label not reflective of their true intentions and circumstances at the time of their divorce.

■ To interpret the Final Decree as contradictory to the spouse's agreement would present a parol evidence problem to this Court.[1] We will apply Texas law to determine this issue as there does not appear to exist a federal parol evidence rule. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58

---

1. Neither party has raised a parol evidence problem to this Court.

S.Ct. 817, 82 L.Ed 1188 (1938). The existing parol evidence common law is a creation of state law. Under Texas law, the parol evidence rule bars the enforcement of prior or contemporaneous agreements introduced to vary, add to, or contradict terms of a fully integrated written instrument. *Beijing Metals & Minerals v. American Business Ctr.,* 993 F.2d 1178 (5th Cir.1993). Johnson seeks to characterize the $400,000 award of contractual alimony in the Final Divorce Decree as the repayment of a debt. Such a characterization is in direct contradiction to the language embodied in the final divorce decree. Once the parties have reduced the agreement to writing they are presumed to have selected from [prior] negotiations only the promises or agreements for which they chose to be bound. *Jack H. Brown & Co., Inc. v. Toys "R" Us, Inc.,* 906 F.2d 169 (5th Cir.1990).

Also, written agreements are presumed to be completely integrated. *Beijing Metals & Minerals v. American Business Ctr.,* 993 F.2d 1178, 1183 (5th Cir.1993). For a court to determine that a written agreement is incomplete it must decide two things: (1) that the writing is facially incomplete and requires extrinsic evidence to clarify, explain or give meaning to its terms; and (2) that when viewed in light of the circumstances surrounding its execution, the writing does not appear to be the complete embodiment of the terms relating to the subject matter of the writing. *Jack H. Brown & Co., Inc. v. Toys "R" Us, Inc.,* 906 F.2d 169 (5th Cir.1990). Again, parol evidence is admissible to give meaning to a document that is facially incomplete only insofar as the evidence does not contradict those terms of the writing that are complete and unambiguous. *Id.*

This Court does not find the language in the final divorce decree dealing with alimony so incomplete that extrinsic evidence is required to give it meaning. Neither does the section dealing with alimony in the Final Decree appear to be anything other than a complete embodiment of terms relating to that particular subject. This proposition that the section on alimony is complete on its face is further buttressed by the fact that the

parties entered into two agreements, both of which are integrated in the final decree. The first agreement is evidenced in a separate section dealing with a property settlement, and the second agreement is the disputed section granting child support and alimony.

The parol evidence rule and the doctrine of integration exist so that parties may rely on the enforcement of agreements that have been reduced to writing. *Id.* at 176. It is true that Texas law recognizes a number of exceptions to the parol evidence rule. However, in the case at bar, Johnson's evidence of his alleged intention to repay a debt and not pay alimony does not fall into any of the recognized exceptions. The alleged intent of Dr. Johnson is inconsistent with the clear and unambiguous language of the Final Decree.

At the trial, Dr. Johnson introduced evidence to contradict the express terms of the parties' written contract. Dr. Johnson's evidence was then contradicted by evidence introduced by his former wife. Taking into account the credibility of the witnesses, this Court cannot conclude that the written agreements approved by the state district court were not accurate nor reflective of the spouses' intentions. Also, the evidence was supportive of the family's then existing costs for maintenance. Because the family did not really have much community property to divide up, it is hard to see why the $400,000 clause in the separate maintenance and support contract should now be construed as a property division when the simultaneously executed property division contract omits it.

In reaching this determination the Court also takes into account the credibility of the parties, as well as the worth of their testimony weighed against the language of the dissolution agreement. *Benich v. Benich,* 811 F.2d 943 (5th Cir.1987). The Court has considered the extreme hostility and animosity existing on both sides, to wit: over $100,000 has been expended on expenses for litigation. Further, this lawsuit has already proceeded through family, state and federal bankruptcy courts and must be speedily resolved.

## ATTORNEY FEES

Ms. Arcelus' counsel also seeks approximately $109,000.00 in attorney fees incurred in his representation of Ms. Arcelus in this bankruptcy proceeding. This Court denies recovery of attorney fees because they are not an obligation of the estate nor in the nature of family support or maintenance. There is no indication that the parties considered these fees to be part of support and maintenance when they executed the Final Decree of Divorce. Significantly, the divorce decree fails to provide for payment of reasonable attorneys' fees and expenses incurred by a party in successfully prosecuting or defending a suit against the other party over the divorce decree's terms. There is thus no contractual basis binding on debtor nor the estate for awarding attorney fees pursuant to the request of Ms. Arcelus' counsel. The obligation appears to be a contractual one between Ms. Arcelus and her attorney.

## CONCLUSION

The award to Ms. Arcelus in the Final Divorce Decree is in the nature of alimony, and not a property settlement. Therefore, the amount of alimony due Ms. Arcelus from Johnson is excepted from discharge pursuant to 11 U.S.C. § 523(a)(5) and is a nondischargeable debt.