In re Michael Samuel APPLING, Debtor.

Michael S. APPLING, Plaintiff,

v.

Emily Frances REES, Defendant.

Bankruptcy No. G93–21552–REB.
Adv. No. 93–2070.

United States Bankruptcy Court,
N.D. Georgia,
Gainesville Division.

March 1, 1995.

J. Michael Lamberth, Lamberth, Bonapfel, Cifelli, Willson & Stokes, P.A., Atlanta, GA, for plaintiff.

Marilyn S. Bright, Atlanta, GA, for defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

ROBERT E. BRIZENDINE, Bankruptcy Judge.

This adversary proceeding is before the Court on Plaintiff–Debtor's motion for summary judgment. In his complaint, Debtor seeks a determination that a jury award arising out of the parties' divorce, which requires him to pay Defendant the sum of $3,000 per month for a period of 84 months, is dischargeable as a division of property. Defendant counters that the obligation is in the nature of alimony, maintenance, or support and thus is nondischargeable pursuant to 11

U.S.C. § 523(a)(5).[1] This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). After reviewing the record and evidence presented, and after considering the argument presented in the briefs, the Court concludes that Debtor's motion should be denied and that judgment should be entered in favor of Defendant.

The following material facts are not in dispute. Debtor and Defendant were married on May 22, 1985. At the time of the divorce, Defendant was 46 years old and had two grown children from a previous marriage. Debtor had three children from a previous marriage, two of whom were minors aged 15 and 11. On December 9, 1992, after a jury trial, the Superior Court of Gwinnett County, Georgia entered a Final Judgment and Decree in which the parties were granted a divorce. The provisions of the Decree also fixed and adjusted the parties' rights and obligations and the court incorporated therein the jury's verdict regarding same.

In its verdict, the jury equitably apportioned certain property as listed therein and also made the following award to Defendant:

> We award alimony to the Plaintiff [Defendant herein] as follows: $3,000 per month for 84 months which payment shall not terminate upon remarriage or death.

*See* Jury Verdict of November 17, 1992, as set forth in Final Judgment and Decree of Divorce, at 2, attached as Exhibit "2" to Affidavit of Emily Frances Rees. In paragraph 6 of the Decree, the trial judge restated this award and described it as "periodic alimony for her [Defendant's] support and maintenance...." Decree at 5. Until he commenced the above-styled bankruptcy case on November 24, 1993, Debtor paid Defen-

dant the sum of $3,000 every month for a period of approximately one year.

Further and as an equitable apportionment, Debtor was awarded, among other things, his interest in Apple Printing and Apple Industries, Inc., which was a printing business he had formed. Defendant, on the other hand, was awarded the marital home, which had been built with a construction loan in the amount of $191,000 on a parcel of property given to Defendant by her mother. *See* Transcript of November 16 and 17, 1992, at 40–42, attached as Exhibit "1" to Defendant's Affidavit.

Before her marriage to Debtor, Defendant worked in various jobs and developed business contacts with a large portion of the commercial real estate community in Gwinnett County. At the time of her marriage, Defendant was earning approximately $46,000 per year plus benefits while working with a developer. *See* Transcript at 37.[2] Thereafter, she worked in the mortgage brokerage business with several different employers including the Bank of Gwinnett. During this time, she also started working at Apple Printing and, by the fall of 1989, was working exclusively at her husband's printing business which, in time, began to earn substantial revenues. Defendant testified that she performed many tasks for the business, such as tabulating sales, generating checks for payables, completing the payroll, and general bookkeeping, as well as, bringing in a large number of customer accounts. In contrast, Debtor tended to discount the extent of her actual contributions to the business. *Compare* Transcript at 44–53; and 107–08.

Debtor argues that the 84 month cash obligation in question represents the jury's equitable division of the printing business as placed in issue by the parties. *Compare*

---

1. Defendant asserts that venue is improper in this Court. She has also filed a counterclaim objecting to Debtor's discharge under various provisions of 11 U.S.C. § 727(a), which Debtor has moved to dismiss, neither of which are addressed herein. Further, it appears that identical claims under Section 727(a) are asserted by Defendant in her complaint initiating Adversary Proceeding No. 94–2016.

2. Debtor notes that during her deposition, Defendant testified that, while working on commission in selling mortgages with her brother, her high-

est annual income was approximately $70,000. *See* Deposition of April 10, 1994 at 25–26. Similarly, he claims that Defendant is an officer of a company, which is the general partner in a family limited partnership owning the family farm property, which he contends is very valuable. There is no indication in the record, however, that such evidence was ever presented to the jury and thus its relevance herein is limited as it is the jury's verdict which is the subject of this Court's examination.

Transcript at 84; and 127. Further, this obligation was awarded as alimony for the express purpose of thwarting any attempt by him to discharge it in a subsequent bankruptcy proceeding.[3] He urges this Court to disregard its label and instead focus on the award's substance which, he contends, will reveal that the obligation is not in the nature of support, but is merely a division of property. *See generally Campbell v. Campbell (In re Campbell)*, 74 B.R. 805 (Bankr.M.D.Fla. 1987); *see also Garrard v. Garrard (In re Garrard)*, 151 B.R. 598 (Bankr.M.D.Fla. 1993).

Debtor asserts that the award's unconditional nature, as reflected in its immunity from death or remarriage, strongly indicates that it arises from an effort to divide marital property.[4] Moreover, an examination of the evidence presented, he insists, clearly shows that the jury awarded Defendant exactly what she requested, a one-half interest in the Debtor's printing business. Debtor maintains that Defendant never testified or produced evidence of her need for support, but expressed her desire that the business interest be evenly divided as a matter of fairness. Debtor's Affidavit, ¶ 13. He states that Defendant's testimony was intended to establish that she had significantly contributed to the success of the printing business. *See* Affidavit, ¶¶ 19, 21; Transcript at 48–54, 68–70, 136–37. In addition, Debtor points to the following interchange between Defendant and her lawyer at the divorce trial:

Q Frances, with respect to the other assets and property of the marriage, including the Apple Printing business, what are you asking of the jury?

A Just a 50/50 split, really, basically.

Transcript at 84.

Debtor argues that the amount of the jury's award fits squarely with her request for her fair share of the Debtor's business when viewed in light of the valuation testimony given by Defendant's expert witness, an Emory Business School professor. This witness testified that the printing business was worth $493,000 to $494,000. *Id.* at 13 (Testimony of Dr. John J. Andrews). Based on a gross payout of $252,000, which represented the value of approximately one-half interest in the company, this witness then calculated the total present value to be $192,477 by using a hypothetical 84 month pay out term at $3,000 per month. *Id.* at 18–19. In addition, he stated that if the payments were called periodic alimony, the actual monthly cost would range from $1,945 to $1,984, since alimony payments are tax deductible to the obligor. *Id.* at 18–20.

Thus, Debtor claims Defendant developed this idea for the jury to award her one-half of the economic value of the printing business by using tax deductible monthly payments and calling it alimony. *See* Transcript at 18–20, 84. The congruence between the valuation evidence used in the hypothetical example, and the amount actually awarded at trial, demonstrates that the jury in fact granted her request. Completion of her strategy, Debtor argues, is evidenced by the alleged petition to the jury that the payments be couched in terms of nondischargeable alimony.[5] Defendant disputes Debtor's claim that she did not testify or produce evidence that she needed $3,000 per month for support

---

3. Debtor has previously been in bankruptcy and received a discharge under Chapter 7 on July 23, 1986.

4. Debtor also contends that because the payments represent a property award, they cannot be included in Defendant's gross income and are not deductible by Debtor for income tax purposes. Further, he asserts that principles of estoppel should apply in terms of requiring that a single obligation be treated consistently for purposes of bankruptcy and tax law. Although the parties' perceptions of the purpose of an award may have some relevance, insofar as it relates to a matter considered by the jury or aids the Court in understanding the jury's verdict, consider-

ations of subsequent tax treatment by the parties are of limited probative value.

5. In an effort to bolster the inference that Defendant engaged in a manipulative scheme to obtain a "nondischargeable" debt, Debtor notes that she introduced evidence of his prior bankruptcy case. Transcript at 86–87. Further, he offers Plaintiff's [Defendant herein] Request to Charge No. 7 which states that unlike alimony, a division of property or lump sum cash award is dischargeable in bankruptcy. *See* Exhibit "2," attached to Defendant's Affidavit; *see also* Debtor's Affidavit, ¶ 18. As Debtor acknowledges, however, the trial court did not give this charge to the jury. Transcript at 176.

needs. *See* Statement of Material Facts, ¶ 16, and Defendant's Response thereto.

Moreover, Debtor maintains that Defendant is a woman of significant means, given the fact that she has numerous business opportunities as a result of her considerable work experience and connections, holds advanced degrees, comes from a prosperous family, and shares substantial holdings of real property with members of her family. Defendant acknowledged at trial that she was established in the business community and had certain advantages that were not available to Debtor. Transcript at 51–53. Further, Debtor states that the business, having lost certain accounts and incurred several major claims against it, is now virtually worthless, and that he is currently only making $5,000 a month. Debtor's Affidavit, ¶¶ 24–25, 33; Transcript at 121, 126. Additionally, he states that he has minor children to support and, based on all of these factors, claims that he is presently unable to make the payments in question.

Defendant counters that Debtor is improperly urging the Court to ignore controlling authority and retry a case that has already been decided. Further, she contends he has extracted and redacted evidence to suit a singular purpose while disregarding the evidence and case law, and offered mere speculation on irrelevant matters to divert the Court from the actual issues. She argues that cases such as *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902 (11th Cir.1985) and *Carver v. Carver (In re Carver)*, 954 F.2d 1573, 1579 (11th Cir.1992), caution that any intervention into state domestic relations issues and divorce decrees must be limited in scope and conducted in the least obtrusive manner possible.

Likewise, she contends, enforcement of support and maintenance obligations supersedes the general rule of dischargeability favoring debtors. *See e.g. Youngman v. Youngman (In re Youngman)*, 122 B.R. 612, 614 (Bankr.N.D.Ga.1991). Thus, the divorce and related issues should not be relitigated herein. Defendant further maintains that a

full examination of the transcript and the instructions to the jury, along with the verdict, clearly shows that the jury did not award her an interest in Debtor's business, but instead found that she had established a need for support and maintenance.

Under 11 U.S.C. § 523(a)(5), the burden of proof is on Defendant to establish that the monthly cash award of $3,000 for a period of 84 months, was "actually in the nature of alimony, maintenance, or support" as distinguished from a property settlement, and thus nondischargeable. *See Harrell, supra,* 754 F.2d 902, 905; *Edwards v. Edwards (In re Edwards),* 31 B.R. 113 (Bankr. N.D.Ga.1983); *see also Youngman, supra,* 122 B.R. 612, 614. Although the validity and enforceability of a claim is determined by reference to state law, federal law governs with respect to the characterization of an obligation as support and thus, whether it is dischargeable in bankruptcy. In this case, issues regarding alimony and property division were submitted to a jury and accordingly, this Court's inquiry is directed to ascertaining its purpose as revealed by the nature of the award in question. *See Long v. West (In re Long),* 794 F.2d 928, 931 (4th Cir. 1986).[6]

Debtor's principal contention is that the substance of the obligation exposes that, despite its being labelled as alimony, it is in fact a division of property. The jury's characterization or labelling of the award is misleading, he argues, because it is the product of artifice and trickery by which Defendant fooled everyone in the courtroom. The jury's so-called alimony award was the result of a deliberate design by Defendant to manipulate the state court into creating a nondischargeable or bankruptcy-proof debt, and thereby circumvent bankruptcy relief. In reality, therefore, the obligation is simply a cleverly disguised division of Debtor's printing business; hence, Debtor is asking this Court to infer that the jury succumbed to shrewd trial tactics in a situation where he chose not to mount a strong rebuttal and was thereby "steamrollered."

---

**6.** Due to the nature of such an inquiry, the Court concludes that the record is complete and a trial would not be helpful in resolving this matter.

Even if the record supported Debtor's claims regarding Defendant's control of the state court trial, this Court will not engage in broad speculation regarding the motive of Defendant and her counsel or the alleged extent to which they defined the jury's understanding of its task.[7] Whether or not Defendant argued to the jury that it should structure its award in a certain way to avoid the effects of a future bankruptcy discharge, the Court will not theorize as to what may or may not have influenced the jury and to what extent. Instead, in order to understand the jury's verdict, the Court must examine it in the context of its overall structure, the evidence presented, and the law as charged by the judge. Moreover, such closing arguments would have preceded the jury charge which, as noted above, did not include any reference to consideration of future bankruptcy proceedings. In fact, the trial judge specifically charged the jury that it was not to consider the effect or consequences of its verdict. *See* Transcript at 194.

■ Concern as to the integrity of judicial proceedings is a very serious matter and should be addressed in the appropriate manner. This Court's mandate, however, is not to delve into and rigorously sift through the state court record in an effort to evaluate all of the various alleged motivations, cunning, comprehension, or vigilance of the participants in a divorce trial, including the trial

judge.[8] The admonition in cases such as *Garrard, supra,* 151 B.R. at 601, against the enforcement of artfully labelled obligations is important. In that case, however, the parties themselves drafted certain terms into a settlement agreement in an effort to protect various payments from bankruptcy. By contrast, in the present case, the focus is on a verdict entered after the matter had been submitted to a full jury trial.[9] Moreover, any concerns that a nondischargeable debt has been artfully created are diminished in view of this Court's duty to determine dischargeability by thoroughly analyzing the award's function in light of the circumstances existing when it was made.

Likewise, efforts to discredit the verdict on grounds that Debtor chose not to litigate actively are simply not persuasive. The Court understands that Debtor may not have wanted a divorce. Presumably, however, he knew the implications of the divorce proceedings and understood the potential outcome of a verdict in Defendant's favor and attendant consequences. Debtor fully participated in those proceedings and had an adequate opportunity to litigate the issues. Further, he was represented throughout the trial by counsel. Thus, the manner in which Debtor chose to use his day in court has no bearing on this Court's review of the nature of the jury's cash award to Defendant.[10]

---

7. Paragraph 13 of Debtor's affidavit is referenced in support of his statement of undisputed fact, paragraph 16, that Defendant's testimony related to her desire that the business be evenly divided. Elsewhere, Debtor avers that based on his recollection, Defendant's counsel specifically argued to the jury that it should award Defendant her claimed one half interest in the printing business and that it should be made as alimony. *See* Debtor's Affidavit, ¶¶ 18, 19. The statement of fact in Paragraph 13 is similar to those statements in Paragraphs 18–19 of Debtor's affidavit, which state, in part, that Defendant's attorney asked the jury to award the sum of $3,000 as alimony and that such award not be contingent upon death or remarriage. This closing argument, however, was not transcribed and it is not in the record. Due to their similarity, however, the Court will construe Defendant's refutation of Paragraph 13 as sufficient to controvert Debtor's characterization of her claim before the jury as set forth in Paragraphs 18–19 of his affidavit.

8. Moreover, such inquiries or inferences are not properly considered in deciding motions for sum-

mary judgment. In addition, such observations do not really prove anything, other than to merely reaffirm the natural tendency that in most instances, the payee-spouse wants an award to be characterized as nondischargeable support whereas a debtor/payor-spouse wants to include the obligation in his discharge.

9. Evidently, Debtor is not suggesting complicity on the part of the jury in Defendant's plan, but rather that it was unwittingly made an agent in Defendant's successful effort to extract a division of property depicted as an alimony award from the state court. Debtor himself apparently only became aware of this alleged scheme after the trial. The role of the trial judge is not addressed.

10. For obvious reasons, collateral attacks upon a jury's determination of who should prevail, based on its application of the law as charged to the facts as found, cannot be sustained on grounds that one side deliberately decided to forego presentation of a vigorous defense.

■ As discussed above, in determining an award's substance under Section 523(a)(5), the Court looks to the context in which the award was structured and how the award relates to it. Ultimately, it is the purpose or function served by a particular obligation which is controlling. *See e.g. Brody v. Brody (In re Brody )*, 120 B.R. 696, 699 (Bankr. E.D.N.Y.1990), *aff'd,* 154 B.R. 408 (E.D.N.Y.), *aff'd,* 3 F.3d 35 (2d Cir.1993). The fact that the award herein is the same as used in the hypothetical introduced by Defendant is not necessarily inconsistent with an award of alimony.

As part of her evidence of need, Defendant points to testimony concerning her sacrifices in order to work at Debtor's business. Transcript at 47, 50–53, and 68–70. Yet, Debtor invokes the same testimony in support of his position regarding the nature of the jury's cash award. This line of argument, along with the award's immunity from remarriage or death, illustrates an inherent problem in ascertaining the purpose of cash installment alimony awards in jury verdicts when analyzed under Section 523(a)(5).

■ In Georgia, although they retain important variations, the methods for disposing of property incident to a divorce, to wit; alimony (periodic or lump sum), property settlement, property division, and equitable division, have tended to converge in terms of their overall purpose. In addition, the underlying considerations or criteria which influence the making of such awards have begun to overlap. As a result, certain awards may be properly construed as advancing interests which include those traditionally associated with other forms of property allocation. Although state law is not determinative herein, this Court, as held in prior decisions, must nonetheless be mindful of state law in analyzing an award's function because it was within those contours that the jury fashioned its relief.

■ In awarding alimony, juries have virtually unlimited power in terms of the scope of property subject to such an award and the structure or manner of its payment. *See* O.C.G.A. § 19–6–5(a); *see also Stumpf v. Stumpf,* 249 Ga. 759, 760, 294 S.E.2d 488 (1982). Accordingly, a jury, in the exercise of its broad discretion, may decide that an award of an absolute estate is the best way to address adequately the support needs in a particular situation. *See e.g. Wise v. Wise,* 156 Ga. 459, 475, 119 S.E. 410 (1923) (recognizing that an award of an absolute estate may constitute permanent alimony). In the present case, the trial judge specifically instructed the jury that property, not subject to equitable division, could nonetheless be awarded as alimony. *See* Transcript at 192.

■ Moreover, in evaluating need and determining the form of alimony awards, juries may consider the marital contributions of an ex-wife in her own right. This is in contrast to the conventional assumption that alimony arises solely out of the ex-husband's marital obligation with its corresponding emphasis upon ability to pay and marital fault. *See generally Davis v. Welch,* 220 Ga. 515, 140 S.E.2d 199 (1965); *see also* Transcript at 189–92. Moreover, a direct connection has been recognized between marital sacrifice and support needs based upon the diminution in earning capacity caused by an ex-spouse's absence from the public job market. *See Moon v. Moon,* 237 Ga. 635, 229 S.E.2d 440 (1976); *compare* O.C.G.A. § 19–6–5(a)(7). Hence, consideration of marital contributions or sacrifices has become increasingly important in determining need.

■ As a result of the statutory and case law development of the various methods for allocating property incident to a divorce, alimony and equitable division awards may result from a consideration of very similar factors. *See e.g.* Transcript at 188–92; *compare* O.C.G.A. § 19–6–5(a); *see also Stokes v. Stokes,* 246 Ga. 765, 771–73, 273 S.E.2d 169 (1980) (Hill, J., concurring); *Rooks v. Rooks,* 252 Ga. 11, 14–18, 311 S.E.2d 169 (1984) (Weltner, J., concurring); *accord Holler v. Holler,* 257 Ga. 27, 28, 354 S.E.2d 140 (1987).[11] Further, a specific award within a

---

11. *Gorman v. Gorman,* 239 Ga. 312, 314, 236 S.E.2d 652 (1977), is representative of a line of cases which roughly paralleled the development of lump sum alimony by expanding the partitioning of property beyond strict title concepts. These rationales merged in a conceptual sense

verdict may be intended to serve multiple purposes. For example, a lump sum cash award payable in installments can be understood as a recognition of a pre-existing property right based on equitable considerations arising from marital contributions. At the same time, it can also be properly construed as being intended to address support needs during a limited period of rehabilitation for purposes of reentry into the public job market. Because such related functions are no longer restricted to a certain form of property allocation, a jury may seek to advance several purposes in the same award.[12]

Similarly, an award's purpose is not predetermined by its particular structure or method of payment. The unconditional nature of an award ordinarily signifies a division of property; whereas, conditions such as death or remarriage are consistent with awards of alimony which traditionally are considered to arise in relation to an ex-husband's marital obligation and are based on need, which may change over time. A review of the jury charge in this case, however, reveals that various means of allocating property incident to a divorce were placed at its disposal. In addition to equitable apportionment, the jury had the power to award lump sum alimony with periodic installments, which was not to be subject to remarriage (Transcript at 193, 11. 6–10) or it could award periodic alimony

and, if it so decided, add such a provision. Transcript at 194, 11. 2–8. Yet, it was given little, if any, specific guidance as to when one particular type of award (i.e. equitable division or alimony) or particular type of alimony, such as lump sum alimony payable in installments or periodic alimony, should be used as opposed to the other.[13]

In view of the foregoing, it is becoming increasingly difficult to untangle the constituent elements of such jury awards and conclusively confirm the existence of a definitive expression of intent in relation to specific transfers of property. Traditional hallmarks of classifying certain obligations incident to a divorce are less important than understanding the integration between the underlying rationale in lump sum alimony cases and equitable division decisions. Whereas immunity from remarriage or death has invariably been treated as consistent with a division of property as opposed to alimony, the convergence of the various factors, which go into the formation of such awards, counsels against viewing an award's structure or nonconditional nature alone as emblematic of purpose.[14] Particular allocations of property are more accurately analyzed by understanding the interrelationship between the various components in a verdict and the factual circumstances of the parties.

when equitable division was recognized in Georgia. *See Stokes, supra,* 246 Ga. 765, 273 S.E.2d 169.

Due to their overlapping considerations, Georgia's alimony provision may be construed as an indication that equitable division property awards should be considered within the framework of alimony. It may have been designed, however, to accommodate Justice Hill's proposal in *Stokes, supra,* 246 Ga. at 771–73, 273 S.E.2d 169, that allocations of property in a divorce situation should be coordinated. For example, equitable division of property would assume the function heretofore served by lump sum alimony. Thus, alimony determinations would come last and would take into account the overall effect of a preceding equitable division award in terms of the amount and liquidity of the resulting estate, and thereby become more closely reflective of actual maintenance needs. *See* O.C.G.A. § 19–6–5(a)(7); *Stokes, supra,* 246 Ga. at 771–73, 273 S.E.2d 169 (Hill, J., concurring).

12. Labels are no longer determinative as the purpose of a property settlement may be to satisfy support or maintenance needs. *See e.g. Col-*

*lins v. Collins,* 208 Ga.App. 862, 432 S.E.2d 605 (1993), *citing, Manuel v. Manuel,* 239 Ga. 685, 687–88, 238 S.E.2d 328 (1977).

13. Moreover, the fact that the jury specifically provided that the award was immune from remarriage or death may be evidence of periodic alimony as the trial judge apparently decided in paragraph 6 of the Decree. Yet, the award, just as plausibly, could be indicative of a belief that the law required that such language be included in connection with lump sum alimony awards payable in installments. In other words, it is not clear whether the jury added this provision in exercise of a perceived discretion, or because it thought that it was necessary under the law to add such language. Further, considerations of fault in terms of the factual cause of the parties' separation and evidence as to their treatment of each other is included in both the charge for equitable division as well as alimony. *See* Transcript at 188–90.

14. For instance, payments may result in a division of property while being intended to provide support. *Brody, supra,* 120 B.R. at 701.

Though not conclusive, the jury's deliberate designation of the award as alimony in a distinct category in its verdict, as distinguished from its prior, separate division of property, does provide relevant insight into the purpose of the award. *See Long, supra,* 794 F.2d at 931; *Myers v. Myers (In re Myers),* 61 B.R. 891, 894 (Bankr.N.D.Ga. 1986); *see also Youngman, supra,* 122 B.R. at 614–15; *accord Harrell, supra,* 754 F.2d at 906. Further, other customarily used factors also tend to support the conclusion that the function of the award was to provide for the support needs of Defendant. *See generally Davidson v. Davidson (In re Davidson ),* 104 B.R. 788, 794–95 (Bankr.N.D.Tex.1989), *aff'd,* 133 B.R. 795 (N.D.Tex.1990), *rev'd on other grounds,* 947 F.2d 1294 (5th Cir.1991); *see also Montgomery v. Montgomery (In re Montgomery ),* 169 B.R. 442, 444 (Bankr. M.D.Fla.1994).

Based on the record, it appears that the parties had been married seven years during which time Defendant eventually began to devote her time to working for Debtor's business for a relatively small salary on a full time basis to the exclusion of other work. *See* Transcript at 47, 50–53, 66–70. As noted above, the extent of her contribution is disputed. Further, she was the primary caretaker for the household. It appears that evidence of Defendant's need was placed before the jury in the form of her testimony and the Domestic Relations Financial Affidavit, in which she listed monthly expenses in the amount of $3,610.50. *See* Plaintiff's Exhibit 43, attached as Exhibit "4" to Defendant's Affidavit; Transcript at 81–83. This affidavit showed no source of income and was not challenged at trial.

Defendant testified that, while Debtor was earning $5,000 to $10,000 per month, she was only earning $800 to $1,200 per month. Transcript at 65–66. Evidently, the parties shared their incomes to some extent and Debtor testified that he paid the mortgage. *Id.* at 66, 98–100. Along with the marital home, which the jury awarded to her, Defendant then became responsible for the monthly mortgage payment of $1,275, in addition to taxes and insurance thereon, as well as other expenses. She testified that she was willing to assume complete responsibility for these payments "[s]ubject to whatever else the jury may decide with respect to the division of property . . . [because she] can't sell it [the house]." Transcript at 82. At that time, the remaining principal loan balance was approximately $181,000.

Although Defendant has considerable work experience, at the time of the trial her monthly income was substantially less than that of Debtor. She testified that the commercial real estate community in Gwinnett County had changed since her absence and, further, she had decided to pursue post-graduate study in the field of adult education which would take at least several more years to complete. *Id.* at 46–47, 80. Thus, the value of her prior business contacts was limited. In addition, though her relationship with the real estate community may have enabled her to attract more business for Apple Printing than Debtor, this difference may be explained, in part, by the fact that he had just emerged from a previous Chapter 7 bankruptcy proceeding.

The jury's decision to grant Defendant a substantial cash award appears to have been made in recognition of her actual need for support based on the disparity between the parties' relative incomes at the time of trial as well as the nonexistence of other means of support then at her disposal. Further, the award appears to address the fact that she would be assuming sole responsibility for the mortgage on the house which had been awarded to her. Defendant's relative work skills and educational level were favorable, and she had a reasonable expectation of gainful employment following the divorce. The jury, however, apparently concluded that she needed time to complete her additional education and training in order to enhance the marketability of her job skills before she could become self-supporting and financially independent. Meanwhile, she faced immediate needs such as the mortgage on the family home and other expenses which had to be paid.

■ Debtor argues that she could have sold the former marital residence and that she had access to substantial property through her family. Such arguments are not

persuasive in that the absence of liquidity in such assets would have been problematical as a meaningful source of income. Debtor further maintains that his income has been reduced dramatically and his printing business is virtually worthless. This Court, however, is not the appropriate forum for considering changed or modified circumstances of a payor spouse. *See Harrell, supra,* 754 F.2d at 902.

Given these circumstances, it is reasonable to conclude that the jury determined that Defendant was in need of support, and its decision to fashion an award, which approximated a figure given in relation to the valuation of a business interest, is not inconsistent with an intent to address such support needs. Further, the jury's recognition of Defendant's sacrifice in devoting time to her former husband's business and their marriage, to the exclusion of other employment, even though it may coexist with an assessment of marital contribution, may nevertheless be a proper consideration in determining the existence of need. Moreover, the fact that such an award may also have been intended to compensate her for such effort does not allow this Court to carve up the award on such basis.

Based on a review of the substance of the jury's cash award in terms of the totality of the various factors as recognized for analyzing obligations under Section 523(a)(5), as well as the overall arrangement of the jury's verdict, the Court concludes that the award's purpose was to provide for Defendant's daily needs while assisting in her rehabilitation for a limited period of time after the divorce. Thus, the obligation created incident to the parties' divorce is in the nature of alimony, maintenance, or support, and it is nondischargeable.

■ In view of the foregoing reasoning, the Court concludes that Debtor has failed to establish that the debt in question is nondischargeable as a matter of law. Further, summary judgment may be awarded in favor of a non-moving party when that party is found to be entitled to a judgment as a matter of law. *See Bosarge v. U.S. Department of Education,* 5 F.3d 1414, 1416 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2720, 129 L.Ed.2d 845 (1994). Therefore, it is

**ORDERED** that Debtor's motion for summary judgment is **denied.** It is

**FURTHER ORDERED** that summary judgment is **granted** in favor of Defendant and against Debtor on his complaint, and Debtor's liability to Defendant based on the award of alimony set forth in the Final Judgment and Decree of the Superior Court of Gwinnett County, Georgia is determined to be **nondischargeable** pursuant to 11 U.S.C. § 523(a)(5).

A separate written judgment will be entered.

The Clerk is directed to serve a copy of this Order upon counsel for Plaintiff, counsel for Defendant, and the Chapter 7 Trustee.

**IT IS SO ORDERED.**