R. LANIER ANDERSON, III, Circuit Judge:
 

 We consider in this bankruptcy appeal the dischargeability of a debtor’s obligation to pay accrued alimony arrearages, and post-majority child support and educational expenses. We conclude that the obligations in question are not dischargeable and accordingly affirm the judgment of the district court. 33 B.R. 989.
 

 I. FACTS AND DECISIONS BELOW
 

 The facts as they appear from the bankruptcy court’s order and the parties’ agreements are essentially as follows. The debt- or and his former spouse (defendant herein) entered into a separation agreement in 1971 requiring debtor to pay defendant $100 each month for her support and maintenance during her life or until she remarried, and to pay $100 each month in support of his son until his son became wholly self-supporting, married, or attained the age of 21. The agreement provided that these amounts were to vary with debtor’s income. Debtor agreed to pay his son’s educational expenses through college and post-graduate school, with debtor’s child support payments reduced by one-half during periods he paid education expenses. The separation agreement provided also that debtor would assume the couple’s joint debts, and that defendant would acquire the marital residence and responsibility for payments on its mortgage.
 

 Debtor made payments under the agreement, but was substantially in arrears by 1974, at which time the separation agreement was amended. The amended agreement reduced the amounts of alimony and child support to a set amount of $200 monthly for each.
 
 [1]
 
 The amended agreement required debtor to establish a trust to secure the obligation to pay his son’s educational expenses. Defendant agreed to waive the then-existing alimony and child support arrearages. Apparently the parties agree that debtor did not establish the trust required by the 1974 amended agreement. Although the parties dispute the amount of arrearages,
 
 [2]
 
 the issue they present to this court concerns the dis-chargeability in bankruptcy of whatever arrearages have accrued.
 

 Debtor filed his Chapter VII petition October 17, 1980. On December 12, 1980, debtor filed a complaint in- bankruptcy court to determine the dischargeability of his domestic debts. Specifically, debtor sought to have declared dischargeable the amounts he owed in alimony and child support arrearages because, he contended, such amounts were not “actually in the nature of alimony, maintenance, or support.” Debtor also sought to have declared dischargeable his obligation to make payments on behalf of his son past the age of eighteen because, as expressed in his complaint, “such obligations were not and are not actually in the nature of alimony, maintenance, or support,” but were “voluntarily assumed and constitute contractual obligations which are discharged by [debtor’s] bankruptcy case.”
 

 The bankruptcy court, 23 B.R. 423, concluded that debtor’s obligation to pay ali
 
 *904
 
 mony arrearages was dischargeable because defendant had not been in present need of the payments at the time debtor filed his petition. The court found, however, that the child support arrearages and the post-majority child support and educational expenses were in the nature of support and therefore were not dischargeable. The bankruptcy court accepted as “reasonable” debtor’s proposed payments of $300 monthly on behalf of his son, but said that the son could seek an increase “at any time that there is a material change in the debt- or’s economic circumstances.”
 

 The district court reversed the bankruptcy court with respect to the alimony arrear-ages and with respect to the $300 monthly amount for post-majority payments. The district court otherwise affirmed the bankruptcy court, with the net result that debt- or’s obligations were all held not to be dischargeable in bankruptcy. Debtor appealed to this court.
 
 [3]
 

 Debtor’s principal contentions on appeal are that: (1) the obligation to pay post-majority child support and educational expenses is dischargeable because the relevant state law does not require a parent to support his child past the age of eighteen; and (2) the alimony arrearages are dis-chargeable because the parties’ separation agreement required debtor to pay more than defendant actually needed for support, and because defendant did not need the arrearages at the time debtor filed his petition in bankruptcy.
 

 II. DISCHARGEABILITY OF DOMESTIC OBLIGATIONS
 

 A debtor may obtain a general discharge under Chapter VII of the Bankruptcy Code from “all debts that arose before the date of the order for relief.” 11 U.S.C.A. § 727(b) (West 1979). The Code makes exceptions for certain obligations, however, among which are alimony and support payments. The language in the Code that provides this treatment states that a discharge under section 727 does not discharge a debtor from any debt:
 

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
 

 (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act); or
 

 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;
 

 11 U.S.C.A. § 523(a)(5) (West 1979 & Supp. 1984). The effect of the statute, then, is that a given domestic obligation is not dis-chargeable if it is “actually in the nature of” alimony, maintenance, or support.
 

 A.
 
 Post-Majority Payments
 

 Debtor contends that his obligation to pay post-majority educational expenses and child support is dischargeable because he was not required under relevant state law to support his son past the age of majority. We do not accept this argument. For several reasons we reject debtor’s premise, that an obligation is “actually in the nature of support” only if it could have been imposed under the relevant state law legal duty of support.
 

 First, the language of § 523(a)(5) does not refer to a particular state law legal duty of support. If Congress had intended dischargeability to be determined by whether an obligation could be imposed under state law, it might have addressed dischargeability in those terms. Congress chose instead to describe as not dischargea-ble those obligations in the “nature” of support. We believe that in using this general and abstract word, Congress did not intend bankruptcy courts to be bound by particular state law rules.
 

 
 *905
 
 This conclusion is directly supported by the legislative history of § 523(a)(5). The committee reports that accompanied the new bankruptcy code provide that “what constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not state law.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6319. We take this legislative history as another indication Congress did not intend dischargeability to be determined by reference to a state law legal duty of support.
 

 Most circuit courts of appeal that have considered the question have likewise concluded that state law does not determine whether a domestic obligation is discharge-able in bankruptcy. In
 
 Shaver v. Shaver,
 
 736 F.2d 1314 (9th Cir.1984), for example, the court considered the effect on dis-chargeability of a provision under Indiana law that allowed alimony only when a spouse was incapacitated or when the parties agreed in writing to an award of alimony.
 
 Id.
 
 at 1316 & n. 4. The court did not follow the state law but looked instead to the substance of the obligation in question to determine if it was one for support.
 
 Id.
 
 at 1316. The court concluded that the parties intended to provide support “and therefore ... the obligation was ‘in the nature of alimony, maintenance, or support’ under federal law.”
 
 Id.
 
 at 1317. Having determined that the obligation was in the nature of support under federal law, the court held that it was not dischargeable in bankruptcy.
 
 Id.
 

 Similarly, in
 
 Williams v. Williams (In re Williams),
 
 703 F.2d 1055 (8th Cir.1983), the court observed that it was “not bound by the characterization of an award under state law.”
 
 Id.
 
 at 1057. The court in
 
 Williams
 
 affirmed that a debtor’s agreement to pay his wife’s attorney’s fees was “in the nature of support,” even though under applicable state rules, the agreement would not be considered support.
 
 Id.
 
 at 1057. The court observed that “whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law.”
 
 Id.
 
 at 1056.
 
 [4]
 

 The case we have considered that is most similar to the present case is
 
 Boyle v. Donovan,
 
 724 F.2d 681 (8th Cir.1984), in which the court considered a debtor’s obligation to pay educational expenses. The court rejected debtor’s argument that since he had no legal duty under state law to pay the expenses, his obligation was discharge-able.
 
 Id.
 
 at 683. The court found that the parties had intended their agreement to function as support, and that this conclusion was not altered by the fact that state law did not require the undertaking.
 
 Id.
 

 We are of like opinion in the present case, that the nature of debtor’s promise to pay educational expenses and child support is not determined by the legal age of majority under state law. The bankruptcy court characterized the agreement to pay educational expenses as in the nature of support, and the only ground on which debtor has challenged that characterization on appeal relates to the state law legal duty as determined by the age of majority. We are persuaded by the language of § 523(a)(5), the legislative history of that section, and the weight of the case law that the absence of a state law duty does not determine that an obligation is dischargeable in bankruptcy. Accordingly, we affirm the district court’s decision with respect to the nondischargeability of debt- or’s obligation to pay post-majority child support and educational expenses.
 
 [5]
 

 
 *906
 
 B.
 
 Alimony Arrearages
 

 Debtor argues on appeal that his alimony arrearages are not “actually in the nature of alimony, maintenance, or support” (1) because the payments he did make adequately met his obligation to support defendant as defined under state law; and (2) because, even if federal law applies rather than state law, defendant did not
 
 need
 
 the arrearages as of the time debtor filed his Chapter VII petition, and thus federal law would not classify such amounts as in the nature of support.
 

 We rejected debtor’s state law contention in Part II.A. above. Thus, we turn directly to debtor’s contention that the bankruptcy court should assess a divorced spouse’s needs and arrive at the precise amount that the spouse would require for support. In accepting this proposition, the bankruptcy court followed
 
 Warner v. Warner (In re Warner),
 
 5 B.R. 434 (Bankr.D.Utah 1980), which held:
 

 even if the debt was originally imposed on the basis of the need of the spouse or children, the debt cannot be held nondis-chargeable unless at the time of filing there exists a present need by the spouse or children that the debt be paid.
 

 Id.
 
 at 442. The court in
 
 Warner
 
 reasoned that the requirement of present need was “necessary to enforce the general purpose of the bankruptcy laws in providing relief for the debtor.”
 
 [6]
 

 Id.
 
 Some bankruptcy courts have followed the holding of
 
 Warner. See, e.g., Miller v. Miller (In re Miller),
 
 17 B.R. 717, 720 (Bankr.W.D.Wis.1982);
 
 Tillett v. Tillett (In re Tillett),
 
 22 B.R. 907, 910 (Bankr.W.D.Okl.1982). The holding of
 
 Warner
 
 is also supported by
 
 Long v. Calhoun,
 
 715 F.2d 1103 (6th Cir.1983), in which the court considered the dischargeability of a debtor’s obligation to assume joint debts incurred during his marriage. The court remanded the case, directing the bankruptcy court to consider “the practical effect of the discharge of each loan upon the dependent spouse’s ability to sustain, daily needs.”
 
 Id.
 
 at 1109. Although
 
 Long v. Calhoun
 
 does not expressly require consideration of present need, the court said that “drastic changes” in a former spouse’s capabilities for self-support might make the continuing assumption of joint debts “unnecessary for support.” 715 F.2d at 1109.
 

 Other courts have rejected the
 
 Warner
 
 approach.
 
 See Benz v. Nelson (In re Nelson),
 
 20 B.R. 1008, 1010-11 (M.D.Tenn.1982). The language of the statute itself, the legislative history and considerations of comity, lead us to the conclusion that the district court in this case was correct in rejecting the reasoning and holding of
 
 Warner.
 

 The language used by Congress in § 523(a)(5) requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is “actually in the nature of alimony, maintenance, or support.” The statutory language suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the
 
 nature
 
 of support. The language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change.
 

 The legislative history is to the same effect. It described the process of determining whether an obligation was in the nature of support as being similar to the determination of whether a payment is actually alimony or in reality a property settlement. The House Report that accompa
 
 *907
 
 nied the Bankruptcy Code reads, in relevant part:
 

 This provision will, however, make non-dischargeable any debts resulting from an agreement by the debtor to hold the debtor’s spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 6319.
 

 Considerations of comity reinforce our interpretation. Debtor’s attempt to expand the dischargeability issue into an assessment of the ongoing financial circumstances of the parties to a marital dispute would of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts.
 
 [7]
 

 We conclude that Congress intended that bankruptcy courts make only a simple inquiry into whether or not the obligation at issue is in the
 
 nature
 
 of support. This inquiry will usually take the form of deciding whether the obligation was in the nature of support as opposed to being in the nature of a property settlement. Thus, there will be no necessity for a precise investigation of the spouse’s circumstances to determine the appropriate level of need or support. It will not be relevant that the circumstances of the parties may have changed,
 
 [8]
 

 e.g.,
 
 the spouse’s need may have been reduced at the time the Chapter VII petition is filed. Thus, limited to its proper role, the bankruptcy court will not duplicate the functions of state domestic relations courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible.
 

 Once the bankruptcy court in this case concluded that the alimony payments were “actually in the nature of alimony,” its task was at an end. The obligation was thereby determined to be nondischargeable under § 523(a)(5).
 
 [9]
 
 The district court correctly rejected the bankruptcy court’s subsequent excursion to determine the precise level of the wife’s need for support.
 

 For the foregoing reasons, the judgment of the district court is in all respects
 

 AFFIRMED.
 

 [1]
 

 . When the agreement was amended, debtor's salary was such that he would have been required by the original agreement to pay $400 monthly for each obligation.
 

 [2]
 

 . The precise terms of the parties’ agreements and their performance under them are matters we leave to the appropriate state court for resolution, should it become necessary.
 

 [3]
 

 . Debtor did not appeal the nondischargeability of the child support arrearages.
 

 [4]
 

 .
 
 Cf. Erspan v. Badgett,
 
 647 F.2d 550, 554 (5th Cir.1981) (federal bankruptcy courts, in determining dischargeability, must look to the substance of an award rather than to state law labels),
 
 cert. denied,
 
 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).
 

 [5]
 

 . Our conclusion that debtor's obligation to pay post-majority child support and educational expenses is not dischargeable means that the obligation remains enforceable beyond the conclusion of his Chapter VII proceeding. As noted, the bankruptcy court set a specific amount debt- or was to pay monthly in satisfaction of his obligation. The precise terms under which the obligation may be enforced, however, can be established only through interpretation of the parties' separation agreements; a task that, should it become necessary, will presumably be
 
 *906
 
 performed by the appropriate state court. As we discuss in Part II.B of this opinion, establishing specific dollar amounts for domestic obligations is not an appropriate task for a federal court.
 

 [6]
 

 . In rejecting
 
 Warner’s
 
 concern for spouses' present need, we also reject that court’s reasoning that the debtor’s need for a fresh start required that approach. We believe that the interest in a fresh start is a matter of federal bankruptcy policy that Congress considered, but resolved in favor of debtors’ spouses when it enacted § 523(a)(5).
 

 [7]
 

 .
 
 Cf. Simms v. Simms,
 
 175 U.S. 162, 167, 20 S.Ct. 58, 60, 44 L.Ed. 115 (1899) (the subject of domestic relations belongs to state, not federal, law). Indeed, on appeal to this court each of the parties attempts to persuade us that the other is financially less deserving. The issue is undoubtedly important, but this court is not a forum for its resolution.
 

 [8]
 

 . We note in this regard that under the law of many states, parties to a divorce may obtain in state court a modification of their obligations by showing changed circumstances.
 
 See, e.g., N.C.
 
 Gen.Stat. § 50-16.9 (Michie 1976); Ga.Code Ann. § 19-6-18 to -27 (Michie 1982 & Supp. 1984); Fla.Stat.Ann. § 61.14 (West Supp.1984);
 
 McGugin v. McGugin,
 
 357 So.2d 347, 351-52 (Ala.Civ.App.1978).
 

 [9]
 

 .The parties do not agree on the amount of debtor's arrearages. We decide here only that debtor’s obligation is not dischargeable in bankruptcy. The precise terms under which debtor’s • obligation can be enforced must be determined by the appropriate state court, if necessary.