United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 2, 1997 Decided October 28, 1997

 No. 95-7302

 Theodore Carlton Richardson, 

 Appellant 

 v.

 Yvonne Edwards, 

 Appellee 

 Appeal from the United States District Court 

 for the District of Columbia 

 (95cv01455)

 T. Carlton Richardson, appearing pro se, argued the cause 
and filed the brief for appellant.

 June White Dillard argued the cause and filed the brief for 
appellee.

 Before: Edwards, Chief Judge, Sentelle and Randolph, 
Circuit Judges.

 Opinion for the Court filed by Circuit Judge Randolph.


 Randolph, Circuit Judge: T. Carlton Richardson filed a 
petition for voluntary bankruptcy in 1994. Among the debts 
he sought to discharge were two resulting from his 1990 
Maryland divorce. The divorce decree incorporated portions 
of a Voluntary Separation and Property Settlement Agree-
ment between Richardson and Yvonne Edwards, to whom he 
had been married for 20 years. The parties reached their 
settlement after trial and after the state court orally issued 
its opinion, but before judgment was entered. The divorce 
decree (1) ordered Richardson to pay Edwards $750 per 
month for child support until the year 2000; and (2) incorpo-
rated the terms of the Settlement Agreement requiring Rich-
ardson to assume the second mortgage on the family home, 
holding Edwards harmless in the event he defaulted.

 Edwards filed a complaint in the bankruptcy court seeking 
a determination that both of Richardson's obligations--the 
child support and the second mortgage assumption--were 
nondischargeable debts "in the nature of alimony, mainte-
nance or support," 11 U.S.C. s 523(a)(5)(B). The bankruptcy 
court agreed with Edwards and the district court affirmed. 
Edwards v. Richardson (In re Richardson), Ch. 7 Case No. 
94-00324, Adv. No. 94-0083 (Bankr. D.D.C. June 6, 1995); 
Richardson v. Edwards, No. 95-1455 (D.D.C. Nov. 17, 1995). 
Richardson then brought this appeal.

 I
 Richardson offers two grounds for overturning the decision 
regarding his $750 monthly child support payments. Both 
grounds rely on the fact that Richardson's and Edwards' 
youngest child became eighteen years old, the age of majority 
in Maryland, see Corry v. O'Neill, 658 A.2d 1155, 1157-58 
(1995); Md. Ann. Code art. I, s 24 (1996), on October 20, 1993.

 Richardson's first point is that when children reach the age 
of majority, only they may contest the dischargeability of 
child support obligations; they are the intended beneficiaries 
of the payments and, given their age, there is no longer any 
custodial parent. Hence, Richardson's former wife has no 


"standing." There is nothing to this. The divorce decree 
designates Edwards as the recipient of Richardson's child 
support payments, including payments to be made after the 
children reach the age of majority. Edwards would therefore 
suffer injury from the discharge of Richardson's debt, and 
her injury is capable of being redressed through a ruling that 
the support payments are nondischargeable. Edwards thus 
fulfills the constitutional requirements for standing to sue. 
See Bennett v. Spear, 117 S. Ct. 1154, 1160 (1997). In 
contending otherwise, Richardson has confused "standing" 
with the requirement that suits be prosecuted in the name of 
the "real party in interest," see Fed. R. Bankr. P. 7017 
(incorporating Fed. R. Civ. P. 17(a)), an objection we will not 
entertain because Richardson failed to raise it in the bank-
ruptcy court. See Whelan v. Abell, 953 F.2d 663, 672 (D.C. 
Cir. 1992). Whether asserted in a motion to dismiss for 
failure to state a cause of action, or as an affirmative defense, 
see 6A Charles Alan Wright et al., Federal Practice and 
Procedure s 1554, at 405-09 (2d ed. 1990), see also Fed. R. 
Bankr. P. 7008 (incorporating Fed. R. Civ. P. 8); Fed. R. 
Bankr. P. 7012(b) (incorporating Fed. R. Civ. P. 12(b)), a "real 
party in interest" objection must be made "with reasonable 
promptness." 6A Wright, supra, s 1554, at 407. To wait 
until the case reaches the court of appeals is to waive the 
objection.

 Richardson's second point is that his obligation to pay 
Edwards $750 per month until the year 2000 cannot be 
considered child "support" within the meaning of s 523(a)(5). 
According to him, these payments resulted from the property 
settlement between him and Edwards. Besides, under Mary-
land law he had no legal duty to provide child support after 
his youngest child reached majority in 1993. See Corry, 658 
A.2d at 1157-58. There are more than a few problems with 
this line of thinking.

 Richardson's initial error is in supposing that child "sup-
port" cannot stem from a "property settlement." The law is 
precisely the opposite. Section 523(a) states:


 (a) A discharge under Section 727, 1141, 1228(a), 
 1228(b), or 1328(b) of this title does not discharge an 
 individual debtor from any debt--

 * * *
 (5) to a spouse, former spouse, or child of the debt-
 or, for alimony to, maintenance for, or support of such 
 spouse or child, in connection with a separation agree-
 ment, divorce decree or other order of a court of 
 record, determination made in accordance with State 
 or territorial law by a governmental unit, or property 
 settlement agreement, but not to the extent that--

 (A) such debt is assigned to another entity, volun-
 tarily, by operation of law, or otherwise (other than 
 debts assigned pursuant to section 402(a)(26) of the 
 Social Security Act, or any such debt which has been 
 assigned to the Federal Government or to a State or 
 any political subdivision of such State); or 

 (B) such debt includes a liability designated as 
 alimony, maintenance, or support, unless such liabili-
 ty is actually in the nature of alimony, maintenance, 
 or support.

To simplify, a debt shall not be discharged if it is "to a 
spouse, former spouse, or child of the debtor" for "support of 
such spouse or child, in connection with" a "property settle-
ment agreement." Even by Richardson's lights, that is what 
occurred here--the child support was "in connection" with a 
property settlement.

 At any rate, Richardson's legal obligation to make the 
monthly payments derived not simply from the parties' agree-
ment, but from the Maryland court's judgment for absolute 
divorce. Without referring to the agreement, the court or-
dered "that the Defendant pay to the Plaintiff as for child 
support and maintenance the sum of seven hundred and fifty 
dollars ($750.00) monthly, payable semi-monthly effective as 
of May 1, 1990 through April 30, 2000 without modifica-
tion...." And so, on the face of the judgment, Richardson's 
child support obligation was--in the language of s 523(a)(5)--


"in connection" with a divorce decree. True, this part of the 
judgment reflected the parties' "Voluntary Separation and 
Property Settlement Agreement." But the portion of the 
agreement dealing with child support was not even in the 
"Marital Property" section, which divided the parties' jointly-
held property. It was set out in a separate section entitled 
"Custody, Visitation, and Support," a placement inconsistent 
with Richardson's claim that the monthly payments repre-
sented a property settlement rather than child support.

 As to Maryland law, the fact that the legal duty to pay 
child support ends when the child reaches majority is not 
determinative. Federal bankruptcy law, not state law, con-
trols whether an obligation is a nondischargeable support 
obligation under s 523(a)(5). See H.R. Rep. No. 95-595, at 
364 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6320; Brody 
v. Brody (In re Brody), 3 F.3d 35, 39 (2d Cir. 1993); Samp-
son v. Sampson (In re Sampson), 997 F.2d 717, 721 (10th Cir. 
1993); Gianakas v. Gianakas (In re Gianakas ), 917 F.2d 
759, 762 (3d Cir. 1990); Sylvester v. Sylvester, 865 F.2d 1164, 
1166 (10th Cir. 1989) (per curiam); Harrell v. Sharp (In re 
Harrell), 754 F.2d 902, 905 (11th Cir. 1985); Long v. Calhoun 
(In re Calhoun), 715 F.2d 1103, 1107 (6th Cir. 1983). Section 
523(a)(5) speaks of "child" support, not support of a "minor 
child," and there is no doubt that Richardson's monthly 
payments were for the benefit of his children regardless of 
their ages. In the Settlement Agreement, Richardson prom-
ised to pay a total of $90,000 "for the support and mainte-
nance of the children of the parties." The monthly payment 
schedule, negotiated by the parties and ordered by the court, 
spread Richardson's debt over a period extending beyond his 
youngest child's 18th birthday. This did not convert the 
nature of Richardson's obligation into something other than 
"child" support for the purpose of federal law. Here, we 
follow Judge Learned Hand, speaking for the court in In re 
Adams: the "fact that the parties chose to spread their 
payments over a period which might ... pass beyond the 
time when any such duty [of support] would exist" did not 
cause the payments to lose their "character as ... support." 
25 F.2d 640, 642 (2d Cir. 1928) (quotations omitted).


 Richardson meant the payments to be for child support; 
the parties characterized the payments that way; the Mary-
land court treated the payments as child support; and any 
reasonable person viewing the settlement agreement and the 
divorce decree would come to the same conclusion, as did the 
bankruptcy judge and the district court. We therefore join 
Harrell, 754 F.2d at 905, and Boyle v. Donovan, 724 F.2d 681, 
683 (8th Cir. 1984), in holding that a debtor's obligation under 
a court order, and pursuant to a settlement agreement, to pay 
post-majority child support is nondischargeable under 
s 523(a)(5) even if the obligation exceeds the requirements of 
state law.

 II
 This brings us to the second mortgage. The Settlement 
Agreement provided that Richardson would convey all his 
interest in the family home to Edwards, that he would pay 
the existing second trust on the home and take out a life 
insurance policy to pay off the second trust in the case of his 
death, and that Edwards would hold him harmless for any 
default on the first trust. In return, Edwards agreed to 
convey her interest in another property to Richardson. In 
the divorce decree, the Maryland court simply ordered "that 
all property settlement matters are resolved pursuant to the 
[Settlement Agreement] and incorporated but not merged 
into this Order...."

 The bankruptcy judge found the Settlement Agreement "at 
least ambiguous regarding whether the obligation to pay the 
second deed of trust was intended to be in the nature of 
support." Edwards, slip op. at 15. The judge then looked to 
extrinsic evidence of the parties' intentions, id. at 17-18, 
including their proposals and counter-proposals during nego-
tiations, and concluded that the second mortgage payment 
was intended to provide "support" rather than serve as a 
means of dividing property. Id. at 1, 18. The district court 
affirmed on the ground that the bankruptcy judge's decision 
was not "clearly erroneous." See Richardson, No. 95-1455.


 Before we start assessing the merits, we must say a few 
words about the standard of review we apply here (and have 
followed in the previous section). We do not agree that the 
standard is of the "clearly erroneous" variety, although some 
other courts have so assumed without discussion. See, e.g., 
Brody, 3 F.3d at 38; Sampson, 997 F.2d at 721; Boyle, 724 
F.2d at 683. A divorce decree incorporating a settlement 
agreement is simply a consent decree. There is no reason for 
treating divorce decrees differently than other consent de-
crees in terms of the scope of appellate review. We custom-
arily review decisions interpreting consent decrees and the 
agreements underlying them de novo, in the same manner as 
we review decisions interpreting contracts. See, e.g., United 
States v. ITT Continental Baking Co., 420 U.S. 223, 236 
(1975); Alliance to End Repression v. Chicago, 119 F.3d 472, 
474 (7th Cir. 1997); Beckett v. Air Line Pilots Ass'n, 995 F.2d 
280, 284, 286 (D.C. Cir. 1993); United States v. Western Elec. 
Co., 846 F.2d 1422, 1427 (D.C. Cir. 1988). We do so because a 
consent decree is a form of contract. See id. It is approved 
on its face by a court presumably not privy to the details of 
negotiation, or the parties' subjective intentions; it is then 
incorporated in a judicial order; and it is ultimately backed 
up by the court's power of contempt. The Supreme Court 
has warned against searching "for the 'purpose' of a consent 
decree" and then construing it in that light. ITT Continental 
Baking, 420 U.S. at 235. The decree must be construed "as it 
is written." Id. at 238. Ordinary "aids of construction," such 
as the circumstances surrounding the formation of the con-
sent order, may be consulted. Id. at 238 & n.11. But 
ultimately the question for the lower court, when it interprets 
a consent decree incorporating a settlement agreement, is 
what a reasonable person in the position of the parties would 
have thought the language meant. See, e.g., Colfax Envelope 
Corp. v. Local No. 458-3M, Chicago Graphic Communica-
tions Int'l Union, 20 F.3d 750, 754 (7th Cir. 1994); Quadran-
gle Dev. Corp. v. Antonelli, 935 F.2d 1337, 1340 (D.C. Cir. 
1991); Lee v. Flintkote Co., 593 F.2d 1275, 1281 n.30 (D.C. 
Cir. 1979); see also E. Allan Farnsworth, Contracts s 7.14 


(2d. ed. 1990). That too is the question on appeal and it is a 
question of law, which is why review is de novo.

 As to the merits, we find the Settlement Agreement neither 
vague nor obscure. To be sure, the bankruptcy court found 
otherwise after careful and thorough consideration. But it 
appears to us, in light of the Agreement's language and 
structure, that there is no hidden meaning, no lurking ambi-
guity. The Agreement states that Richardson will assume 
the second mortgage as part of the division of marital proper-
ty. Nothing suggests that the parties were using the second 
mortgage assumption as a means of providing alimony or 
child support.

 The Settlement Agreement is divided into six sections, only 
two of which are relevant. The section headed "Custody, 
Visitation, and Support" describes custody arrangements and 
Richardson's child support obligations. The section headed 
"Marital Property" divides up the parties' marital property 
and includes the provision obligating Richardson to pay the 
second mortgage. This in itself is a strong indication that 
Richardson's second mortgage obligation was exactly what it 
purported to be, a means of allocating the parties' property.

 The bankruptcy judge focused on one of the Agreement's 
opening Recitals, which stated that "it is [the parties'] intent 
to resolve all martial [sic] property rights," including "alimo-
ny." See Edwards, slip op. at 12, 14. We do not agree that 
the reference to "alimony" casts doubt upon the nature of the 
second mortgage provision. Edwards did not include a claim 
for alimony in her Complaint for Absolute Divorce, and the 
Maryland court never mentioned it in its oral opinion ren-
dered before the parties settled the case. That the parties 
said they were resolving alimony, which was not an issue in 
the divorce proceedings, scarcely means that the second 
mortgage payments were alimony or something in the nature 
of alimony.

 The mortgage payments are not even structured in the 
form of support payments. Richardson's responsibility for 
the mortgage is not contingent upon changes in the parties' 
financial circumstances, or the continued occupation of the 


house by Edwards or the children,1 or the death or remar-
riage of Edwards, all of which would be expected if the 
mortgage payments were alimony or support. Cf. Wright v. 
Commissioner, 543 F.2d 593, 599 (7th Cir. 1976).2 Under the 
Internal Revenue Code, which, like the Bankruptcy Code, 
also requires federal courts to distinguish alimony payments 
from property settlements, courts must look to the form of 
the payment in drawing the distinction. See 26 U.S.C. 
s 71(b)(1)(A-D) (to qualify as alimony, payments must be 
received by a spouse under a divorce or separation agree-
ment, the payor and payee must not be members of the same 
household, and payments must terminate upon payee's 
death); see also H.R. Rep. No. 98-432, pt. 2, at 1496 (1984), 
reprinted in 1984 U.S.C.C.A.N. 697, 1138 ("In order to pre-
vent the deduction of amounts which are in effect transfers of 
property unrelated to the support needs of the recipient, the 
bill provides that a payment qualifies as alimony only if the 
payor ... has no liability to make any such payment for any 
period following the death of the payee spouse."). The 
unconditional form of the mortgage payments here, together 
with their placement in the "Marital Property" section of the 
Agreement, leads to the conclusion that the payments were 
not in the nature of alimony or support.

 Perhaps because of these considerations, Edwards does not 
argue that the mortgage payments were intended to serve 
specifically as child support or alimony. Instead, she con-
tends that under s 523(a)(5) any obligation incurred by the 
debtor that serves to support the debtor's spouse--as did 
Richardson's assumption of the second mortgage payments--

__________
 1 In fact, the Agreement specifically contemplates the possibili-
ty that Edwards and the children would move. A provision of the 
Agreement requires Edwards to inform Richardson of the chil-
dren's location should she change address.

 2 According to Richardson's brief, he took out the second 
mortgage in order to secure a business loan; when married, the 
couple viewed the obligation not as a joint debt, but rather as a 
business debt assumed by Richardson; and prior to their divorce, 
Edwards paid the first mortgage out of her salary, while Richard-
son paid the second mortgage.


qualifies as a nondischargeable debt. We are uncertain 
whether the bankruptcy judge embraced this proposition, but 
we are certain that it proves too much. Money is fungible. 
The divorcing couple is well aware that the basket of goods to 
be divided among them is finite. The amount and duration of 
support or alimony payments may well depend on the division 
of property the couple settles upon. To some degree, all 
property awards help to "support" the receiving spouse, yet 
such awards are clearly not within s 523(a)(5)'s exemption.3 
The statute distinguishes nondischargeable spousal and child 
support payments from property settlements. It "makes 
nondischargeable any debts ... in payment of alimony, main-
tenance, or support of the spouse, as determined under 
bankruptcy law considerations as to whether a particular 
agreement to pay money to a spouse is actually alimony or a 
property settlement." S. Rep. No. 95-989, at 79 (1978), 
reprinted in 1978 U.S.C.C.A.N. 5787, 5865.

 Richardson's assumption of the second mortgage is neither 
alimony, nor spousal or child support within the protection of 
s 523(a)(5). It is exactly what it purported to be and what 
the Maryland court must have construed it to be--namely, an 
essential part of the parties' agreed-upon division of property, 
and thus an obligation dischargeable in bankruptcy.

 * * *
 Richardson's child support obligations are nondischarge-
able under s 523(a)(5) of the Bankruptcy Code. His obli-
gation to pay the second mortgage on the Maryland home is 
dischargeable.

Affirmed in part, reversed in part.

__________
 3 Why, one might ask, should not property settlements also be 
nondischargeable in bankruptcy? Congress recently asked itself 
this question and answered by amending s 523 to provide that, 
under certain conditions, property settlements are also nondis-
chargeable. See Bankruptcy Reform Act of 1994, Pub L. No. 103-
394, s 304(e), 108 Stat. 4106, 4133. Richardson filed his petition 
before October 22, 1994, the effective date of the Act, and the 
amendment therefore does not apply.