**In re Jack A. HORNER, Debtor.**

**Jack A. HORNER, Appellant,**

v.

**Barbara HORNER, Appellee.**

Nos. 95–11415, CV 197–313.
Adversary No. 95–01090.

United States District Court,
S.D. Georgia,
Augusta Division.

July 20, 1998.

---

Terry Leiden, Augusta, GA, for Appellant.

Mark A. Cleary, Mark A. Cleary, P.C., Augusta, GA, for Appellee.

Jack Keith Berry, Savannah, GA, for U.S. Trustee.

Edward J. Coleman, III, Surrett & Coleman, Augusta, GA, Chapter 7 Trustee.

## ORDER

BOWEN, Chief Judge.

Before the Court is Jack A. Horner's appeal of the Bankruptcy Judge's determination that a debt created pursuant to his separation agreement with Appellee Barbara Horner is actually in the nature of alimony, maintenance, or support and therefore nondischargeable in his Chapter 7 bankruptcy case. Upon careful consideration of the record on appeal and the briefs submitted by the parties, the Bankruptcy Judge's decision is **REVERSED** for the reasons stated below.

### I. BACKGROUND

Jack and Barbara Horner were divorced in 1991 after 23 years of marriage. The Horners' marriage produced two children, who were 22 and 17 years old at the time of the divorce.[1] In 1990, the year immediately preceding the divorce, Mr. Horner earned approximately $60,000, while Ms. Horner earned approximately $40,000. The parties' rights and obligations in connection with the divorce were set forth in a jointly prepared separation agreement, which provided in pertinent part as follows:

2. *ALIMONY WAIVER.* Each party waives and forever relinquishes any claims each has or may have to alimony, maintenance and support of any nature from the other or his or her estate whether in the form of periodic payments, lump sum payments or awards of property from his or her separate estate or otherwise, except as set forth in this agreement.

3. *PROPERTY DIVISION* ....

(a) *Home Place.* The wife presently owns the house and 15.96 acres of land used by the parties as their residence and the residence of the children, the husband having Quit–Claimed his interest in said property to the wife in November of 1989. In addition the wife owns an[ ] adjacent 10.487 acres of land which was purchased by her separately. *As a division of property and not as alimony the wife alone shall retain ownership of the home place and the adjacent tract of land.* It is understood and agreed that said Home Place

is subject to a first mortgage now held by BarclaysAmerican/Mortgage Corporation and a second Mortgage held by Bankers First Federal Savings and Loan Association, which mortgages the wife assumes and agrees to pay.

. . .

(d) *Other Real Property of Wife.* The wife presently owns four other parcels of real estate consisting of a lot in Ponderosa Subdivision in Lincoln [sic] and rental propperty [sic] located at 1806 Wrightsboro Road, Augusta, Georgia, 4502 Evanston Drive, Martinez, Georgia, and 520 Highview Way, Martinez, Georgia. These properties were purchased with the separate funds of the wife and the husband waives any claim which he may have to said properties.

. . .

9. *SUPPORT FOR WIFE.* The husband shall pay to the wife or her heirs or personal representative in the event of her death FOURTEEN THOUSAND THREE HUNDRED ($14,300.00) DOLLARS annually, payable ELEVEN HUNDRED ($1,100.00) DOLLARS every fourth (4) week beginning *March 7, 1991 to enable her to make the mortgage payments on the [marital residence].* ... All obligations of the husband to pay the support payments provided for herein shall terminate upon his attaining the age of 65 years on January 31, 2005. The payments provided for in this paragraph for the benefit of the Wife by the Husband shall not be included in the gross income of the Wife under Section 67(b)(1)(B) of the Internal Revenue Code, and not allowable as a deduction to the Husband under section 215 of the Internal Revenue Code of 1954, as amended.

(emphasis supplied). The agreement further provided that Mr. and Ms. Horner were to retain joint custody and control over their minor daughter, but that Ms. Horner would have primary custody and would provide a home for her. (Separation Agreement ¶ 6). Mr. Horner was required to pay $1,100.00 in child support every four weeks; these payments were to continue until June 2001 un-

---

1. The younger child turned 18 shortly after the divorce became final.

less terminated earlier by the daughter's affirmative declaration that she was finished with her higher education. (Separation Agreement ¶ 7). Upon the cessation or temporary abatement of the child support payments under ¶ 7, the payments to Ms. Horner required under ¶ 9 were to be increased by $550.00.

Mr. Horner made the payments required by ¶ 9 until March 1993. Before cashing some of these checks, Ms. Horner wrote "debt repayment" on them. The parties complied with the tax provisions of ¶ 9: Mr. Horner did not deduct the payments from his income and Ms. Horner did not include them in her income. In August 1993, however, Mr. Horner filed an action for modification of alimony under O.C.G.A. § 19–6–19 in the Superior Court of Columbia County, Georgia. Mr. Horner's request was denied because the court found the payments under ¶ 9 were not periodic payments subject to modification, but rather were "lump sum alimony" payable in installments and therefore not eligible for revision.

In October 1995, after filing a Chapter 7 petition, Mr. Horner instituted an adversary proceeding seeking to discharge his debt to Ms. Horner created by ¶ 9.[2] Following a bench trial in July 1996, the Bankruptcy Judge determined that the debt was not dischargeable because it is in the nature of alimony, maintenance, or support. Mr. Horner appealed that decision to this Court, and in January 1997 I vacated the Bankruptcy Judge's decision and remanded for further proceedings because the Bankruptcy Judge's oral statement did not clearly set forth his reasoning and analysis. *Horner v. Horner (In re Horner)*, No. CV 196–157 (S.D.Ga. Jan. 15, 1997). The Bankruptcy Judge subsequently entered a written order explaining his earlier decision, and the instant appeal followed.

## II. STANDARDS OF REVIEW

The Bankruptcy Judge's findings of fact are reviewed for clear error. *Securities*

*Group v. Barnett (In re Monetary Group)*, 2 F.3d 1098, 1103 (11th Cir.1993) (per curiam). His conclusions of law are reviewed *de novo*. *Id.*

## III. ANALYSIS

■ In general, a Chapter 7 debtor may obtain a discharge from "all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b). A division of property pursuant to a divorce decree is a debt dischargeable under § 727. *Bedingfield v. Bedingfield (In re Bedingfield)*, 42 B.R. 641, 645 (S.D.Ga. 1983). However, a debt that is "actually in the nature of alimony, maintenance, or support" is excluded from the § 727 discharge. 11 U.S.C. § 523(a)(5); *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 904 (11th Cir.1985). The party opposing discharge bears the burden of establishing that the debtor's obligation is actually in the nature of alimony, maintenance, or support. *Montgomery v. Montgomery (In re Montgomery)*, 169 B.R. 442, 444 (Bankr.M.D.Fla.1994).

■ Federal law, not state law, governs whether a debt is non-dischargeable because it is in the nature of alimony, maintenance, or support. *Harrell*, 754 F.2d at 905. Nevertheless, state law may provide useful, though non-dispositive, guidance on this issue. *See Rosenblatt v. Wittlin (In re Rosenblatt)*, 176 B.R. 76, 78 (Bankr.S.D.Fla.1994); *Jackson v. Jackson (In re Jackson)*, 102 B.R. 524, 531 n. 11 (Bankr.M.D.La.1989). Where, as here, the final divorce decree merely approves an agreement between the parties, the intent of the parties is the focus of the inquiry. *West v. West (In re West)*, 95 B.R. 395, 399 (Bankr.E.D.Va.1989). A federal court is not bound by the label that the parties or the state court attach to an award; the substance and function of the obligation rather than its form determine whether the obligation is dischargeable. *See Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984); *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir.1981);

---

**2.** It should be emphasized, however, that Mr. Horner seeks discharge of only the $1,100.00 monthly payments under ¶ 9, which were intended to enable Ms. Horner to satisfy the mortgage payments on the marital residence. Thus, the instant proceedings do not address the dischargeability of the additional $550.00 per month required by ¶ 9 upon cessation or abatement of the child support payments under ¶ 7.

*Erspan v. Badgett,* 647 F.2d 550, 554 (5th Cir.1981). To ascertain the intent of the parties and the substance and function of the obligation, a bankruptcy judge may consider any or all of the following factors:

(1) The amount of alimony, if any, awarded by the state court and the adequacy of any such award;

(2) the need for support and the relative income of the parties at the time the divorce decree was entered;

(3) the number and age of children;

(4) the length of the marriage;

(5) whether the obligation terminates on death or remarriage of the former spouse;

(6) whether the obligation is payable over a long period of time;

(7) the age, health, education, and work experience of both parties;

(8) whether the payments are intended as economic security or retirement benefits;

(9) the standard of living established during the marriage.

*Suarez v. Suarez (In re Suarez),* Ch. 11 Case No. 91–20276, Adv. No. 92–2009, slip op. at 23–24 (Bankr.S.D.Ga. Dec. 23, 1992) (citing *Leslie v. Hart (In re Hart),* 130 B.R. 817, 836–37 (Bankr.N.D.Ind.1991)). This list, which is similar to lists formulated by other courts,[3] is a non-exhaustive compilation of

factors that need not be proven or even considered in every case. *See Jackson,* 102 B.R. at 531; *see also Benich v. Benich (In re Benich),* 811 F.2d 943, 945 (5th Cir.1987) (explaining that such factors "are not legal criteria, ... but relevant evidentiary factors that assist the bankruptcy court as trier of fact in determining the true nature of the debt created by the agreement"). Indeed, in my previous Order in this case, I directed the Bankruptcy Judge to consider, in addition to the *Suarez* factors, the tax treatment of the payments, the character of the payments as a sum certain over a specified period, and the state court's characterization of the obligation as lump sum alimony.[4]

On remand, the Bankruptcy Judge reiterated his earlier finding that the payments to Ms. Horner under ¶ 9 were intended as support. He methodically addressed each factor individually but ultimately concluded that they were "at best inconclusive and at worst confusing" in this case. (Order of Sept. 17, 1997 at 22). Nevertheless, in support of his finding the Bankruptcy Judge emphasized the length of the marriage, the income disparity between the parties at the time of the divorce, the family's standard of living at the time of the divorce, and the language used in the separation agreement. (*Id.* at 23–24). The Bankruptcy Judge noted that Ms. Horner's monthly disposable income at the time of the divorce was approximately $1,900.00,

---

3. The court in *Coffman v. Coffman (In re Coffman),* 52 B.R. 667, 674–75 (Bankr.D.Md.1985) derived a list of 18 factors from a survey of the applicable case law.

4. The Bankruptcy Judge interpreted my Order as also requiring a separate inquiry into (1) whether there were minor children requiring support, and (2) Ms. Horner's need for support in light of all of her financial resources. (Order of Sept. 17, 1997 at 11). I did not, however, state these considerations as separate factors; rather, I noted that although these considerations bore heavily upon one or more of the *Suarez* factors, they apparently had not been considered in the Bankruptcy Judge's previous decision. (*See* Order of Jan. 15, 1997 at 9–10).

Furthermore, the Bankruptcy Judge seemed to lament that consideration of numerous factors unduly complicates what is supposed to be "a *simple* inquiry as to whether the obligation can legitimately be characterized as support." (Order of Sept. 17, 1997 at 11) (quoting *Harrell,* 754 F.2d at 906) (emphasis supplied by Bankruptcy

Judge). While I share this concern to some degree, I must observe that this quotation overstates this aspect of the *Harrell* decision: In making this statement, the court was responding to the debtor's contention that a bankruptcy judge should inquire into a divorced spouse's needs in order to assess the precise amount of support required. 754 F.2d at 906. The Eleventh Circuit held that no such detailed inquiry is required, but rather "only a simple inquiry into whether or not the obligation at issue is in the *nature* of support." *Id.* at 907. Moreover, as has already been emphasized, the factors enumerated in *Suarez* and in similar cases are not required to be analyzed in every case. Rather, they are meant only as a guide to assist the bankruptcy judge in ascertaining whether the payments at issue were intended to function as alimony, maintenance, or support as opposed to a property settlement. This inquiry into the substance and function of the payments frequently may prove to be somewhat involved.

and that the monthly outlays for mortgages, interest, and taxes on the marital residence totaled approximately $1,400.00. The remaining $500.00 was insufficient, in his view, to maintain Ms. Horner and the minor daughter in the standard of living which the family had attained and enjoyed during the course of the twenty-three year marriage. Thus, the Bankruptcy Judge found that the payments of $1,100.00 to Ms. Horner every four weeks under ¶ 9, which were designated as "support for wife," coupled with the $1,100.00 child support payments required by ¶ 7, were intended to maintain Ms. Horner and her daughter in the marital residence consistent with their accustomed standard of living while the daughter pursued her higher education.

■ The Bankruptcy Judge's analysis, however, overlooks or dismisses more probative considerations. He acknowledged that the continuation of the payments following Ms. Horner's death strongly indicates that the payments were intended as a division of property and not as alimony or support. *See Adler v. Nicholas,* 381 F.2d 168, 171 (5th Cir.1967) ("Payment of a continuing obligation after the wife's need for support terminates strongly supports an intent to divide property and strongly refutes an argument that this is alimony."). Nevertheless, he apparently gave this "strong" indicator little, if any, weight in his analysis.

■ Similarly, the Bankruptcy Judge noted that the tax treatment of the payments under ¶ 9 mitigates against a determination of support. *See, e.g., Copeland v. Copeland (In re Copeland),* 151 B.R. 907, 910 (Bankr. W.D.Ark.1993) ("The tax treatment chosen by the parties is relevant and very probative to the determination of the parties' intent."). Again, however, he gave little consideration to this "very probative" factor.[5]

■ Finally, the Bankruptcy Judge dismissed the state court's determination that the payments at issue were "lump sum alimony" rather than conventional or periodic alimony on the grounds that the state court did not address whether the Horners intended the payments to serve as support or as a division of property. The Bankruptcy Judge declared that this classification is relevant only in a state court action for modification under O.C.G.A. § 19-6-19 and thus declined to consider the state court's determination in his analysis. While the Bankruptcy Judge is correct that the state court's determination is not binding in this bankruptcy proceeding, its determination is nevertheless highly relevant because "lump sum alimony" under Georgia law is considered to be in the nature of a property settlement.[6] *See Hamilton v.*

---

5. Indeed, the probative nature of this factor is illustrated by the holding of some courts that a debtor who has deducted payments as alimony on his or her federal income tax returns is estopped from later asserting that the underlying debt is not actually in the nature of alimony, maintenance, or support. *See Robb–Fulton v. Robb (In re Robb),* 23 F.3d 895, 898–99 (4th Cir.1994); *Davidson v. Davidson (In re Davidson),* 947 F.2d 1294, 1297 (5th Cir.1991). Ms. Horner argues that these cases should not be considered because Mr. Horner raised this "quasi-estoppel" issue for the first time on appeal. However, I do not consider these cases in support of Mr. Horner's estoppel argument; indeed, I agree with other cases which hold that the tax treatment of the payments is but one of many factors that may be considered. *See Sampson v. Sampson (In re Sampson),* 997 F.2d 717, 724–25 n. 6 (10th Cir.1993). Rather, I deem these cases relevant because they illustrate that the tax treatment of the payments is considered highly probative in deciding whether the payments were intended as support or as a division of property.

Ms. Horner also hints in her brief that the tax treatment should be ignored because she and Mr.

Horner agreed to the tax treatment in lieu of higher payments under ¶ 9. That is, she claims that it was their intent that she have $1,100.00 after taxes on these payments, and that she would have negotiated a higher payment if she was to include them in her taxable income. The Bankruptcy Judge, however, made no finding in this regard; to the contrary, he noted that the parties' tax treatment is inconsistent with alimony or support. In any event, the other factors discussed herein amply support my conclusion that the Bankruptcy Judge's ultimate determination was in error. Thus, even if I were to accept Ms. Horner's argument and ignore the parties' tax treatment of the payments, it would not alter my ultimate conclusion that the Bankruptcy Judge's determination is clearly erroneous.

6. Ms. Horner points out in her brief that Georgia courts do not consider the distinction between lump sum and periodic alimony to be determinative of a debt's dischargeability in bankruptcy because a payment classified as lump sum alimony—and hence in the nature of a property settlement—could nevertheless have been intended as maintenance or support. *See Manuel v. Manuel,*

*Finch,* 238 Ga. 78, 78, 230 S.E.2d 881 (1976) ("Alimony in gross, or in a lump sum, is in the nature of a final property settlement, and hence in some jurisdictions is *not included in* the term 'alimony,' which in its strict or technical sense contemplates money payments at regular intervals.") (citation omitted).

■ In addition to giving practically no weight to these important considerations, the Bankruptcy Judge appears to have overstated Ms. Horner's need for the "support" payments required under ¶ 9. As previously noted, the Bankruptcy Judge found that the payments were intended to maintain Ms. Horner and her daughter in the marital residence consistent with the standard of living they had enjoyed during the marriage. He noted that Ms. Horner had substantial real estate assets at the time of the divorce which, including the marital residence, had a value in excess of $500,000.00. The residence itself, which was located on a sixteen-acre tract, was valued at approximately $245,000.00. In assessing the relative financial situation of Mr. and Ms. Horner, the Bankruptcy Judge discounted her ability to use her assets to help pay the mortgages on the residence because she had purchased two of the properties in order to provide security for the children's higher education. At the time of the divorce, however, the Horners' son had almost completed his college education, and the child support payments under ¶ 7 were intended to support their younger daughter during her post-secondary education. Thus, there is little reason to discount the availability of these substantial assets to offset some or all of the mortgage payments.

239 Ga. 685, 687–88, 238 S.E.2d 328 (1977) ("[D]ebts for alimony *or maintenance or support of wife or child* are not dischargeable in bankruptcy. It is entirely conceivable that the purpose of a property settlement might be to provide the former wife with maintenance or support."); *Collins v.. Collins,* 208 Ga.App. 862, 863, 432 S.E.2d 605 (1993) (same). This observation, however, merely restates what has already been emphasized again and again in this case—that the label of a particular obligation is not determi-

The payments under ¶ 9 were expressly for the purpose of enabling Ms. Horner to make the mortgage payments on the marital residence. This residence, however, was expressly given to Ms. Horner "as a division of property and not as alimony," and it was in this capacity that she assumed the mortgages. (Separation Agreement ¶ 3(a)). Although nominally labeled "support," the payments to Ms. Horner were intended to cover the mortgage payments on the marital residence, which she had received as a division of property. Moreover, the payments did not cease upon Ms. Horner's death; they were declared to be nontaxable to her and nondeductible to Mr. Horner; and the state court found the obligation to be lump sum alimony. It is clear from the totality of the circumstances that the payments under ¶ 9 were not for the "support" of Ms. Horner and her daughter, but rather were incident to the division of property between Mr. and Ms. Horner. Thus, the Bankruptcy Judge's determination that the payments are actually in the nature of alimony, maintenance, or support must be reversed.

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Judge's decision is **REVERSED**. The case is hereby **REMANDED** to the Bankruptcy Court for further proceedings consistent with this Order.

native of its dischargeability, but rather its substance and function. More fundamentally, these courts did not indicate that the state law classification is irrelevant in examining the substance and function of the payments at issue. Thus, while a state court's classification of the obligation as lump sum alimony may not be conclusive as to whether it is in the nature of alimony, maintenance, or support, neither should the state court's determination be dismissed as irrelevant.