In re Nicholas BATZEK, III, Debtor.

Linda Kay Batzek, Plaintiff,

v.

Nicholas Batzek, III, Defendant.

Bankruptcy No. 03–00717–9P7.
Adversary No. 03–220.

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Aug. 23, 2004.

Robert L. Vaughn, Ft. Myers, FL, for Debtor.

## MEMORANDUM OPINION, FINDINGS OF FACTS AND CONCLUSIONS OF LAW

ALEXANDER L. PASKAY, Bankruptcy Judge.

The matter under consideration in this Chapter 7 case of Nicholas Batzek, III (Debtor) is the dischargeability *vel non* of certain monetary obligations of the Debtor owed to his former spouse, Linda Batzek (Ms. Batzek), who commenced this adversary proceeding.

The claims of nondischargeability of Ms. Batzek are set forth in two Counts. In Count I, she contends that by virtue of a Final Judgment and Decree (Final Judgment), terminating the marriage of the parties issued by the Superior Court of Bartow County, State of Georgia, the Debtor is obligated to pay the second mortgage on the former marital residence and the monthly payment on a 200 Dodge Van (Van) until they are paid in full. According to Ms. Batzek, these obligations are in the nature of support and thus are excepted from the discharge. Although the Complaint does not state the legal basis for the claim, it is evident that she relies on 11 U.S.C. § 523(a)(5). The Claim in Count II is based on the same facts alleged in Count I but is brought pursuant to 11 U.S.C. § 523(a)(15), contending that discharging the Debtor's obligation to pay the second mortgage and the payment on the Van "would cause continuing serious detrimental consequences" to Ms. Batzek.

In due course, the Debtor filed his Answer to the Complaint and set forth some admissions and denials, as well as four Affirmative Defenses. In his First Affirmative Defense, he contends that the obligations imposed by the Final Judgment are in the nature of a property settlement rather than alimony or support obligations. In his Second Affirmative Defense, the Debtor contends that he is unable to pay the obligations in any amount because he became permanently disabled due to an on-the-job injury since the entry of the Final Judgment. In his Third Affirmative Defense, the Debtor contends that discharging the obligation to pay the second mortgage and the Van would result in a benefit that outweighs the detrimental consequences to his former spouse. In his Fourth Affirmative Defense, the Debtor contends that he does not have the ability to pay the obligations from his income or property reasonable necessary for his maintenance and support.

The facts relevant to and determinative of the issues raised by the pleadings are straightforward and without dispute and can be summarized as follow:

The Debtor and Ms. Batzek married in 1971. The Final Judgment dissolving the marriage was issued by the Superior Court in Georgia on May 17 2001. (Pl.Ex. A). The Final Judgment made no provisions for alimony or support; awarded the former marital home in Cartersville, Georgia to Ms. Batzek; and required her to pay the first mortgage payment and the Debtor to pay the second mortgage.

The court awarded certain specific personal property items to the Debtor and the balance of the personal property was divided according to the mutual satisfaction of the parties. The court awarded the Van to Ms. Batzek and required the Debtor to make payments on the Van. The Debtor was awarded a Chevrolet Corvette.

The Final Judgment is silent as to the finality of the monetary obligations imposed on the Debtor, and thus it will not terminate on remarriage or death. There is no provision for the retention of jurisdiction or for modifications based on a change of financial conditions. While both monetary obligations involve installment pay-

ments, there is no prohibition to pay of the balances in one lump sum.

On July 10, 2003, the Superior Court also entered a Final Order and made the finding that at the time of the divorce, Ms. Batzek earned approximately $10,000 annually and the Debtor $75,000 annually. (Pl.Ex. 11). The court also found that the payments on the second mortgage of the former marital home and on the Van were necessary for the maintenance and support. The payments were awarded to assist Ms. Batzek in maintaining the life style of her 29 years of married life.

The record reveals that the Debtor, after having served in the U.S. Navy, obtained employment with General Dynamics in 1972, as an electronic missile technician. He worked with General Dynamics in Groton, Connecticut on nuclear powered submarines. In 1978, he moved to Cartersville, Georgia and obtained employment as a senior design engineer with Thrall Car Manufacturing Company, where he worked until 2001, when he was laid off. After he was laid off, he did not have a steady job and with the exceptions of when he worked occasionally in different RV Parks while traveling around the State, he was unemployed.

In June 2001, he moved into the Lover's Key State Park and stayed in the park and again worked as a volunteer doing several sundry repairs and maintenance work. In exchange, he received free RV Site. On August 6, 2002, while working as a volunteer at the Lover's Key RV park, fixing the bumper of a truck, a wrench slipped off of the bumper and the Debtor's hand hit the bumper, cutting his fingers on his left hand. Defendant's Injury Report. (Pl.Ex. 8). The Radiology Report, attached to the Defendant's Injury Report, indicates that the third finger on the Debtor's left hand showed comminuted displaced fracture and soft tissue injury to the left third and fourth distal phalanx. According to the Report of Operation, also attached to the Defendant's Injury Report, the left fourth fingertip wound was repaired with a flap. The Discharge Summary indicates there was no complications and activities should be indoors only and the hand should be elevated until healed.

According to the Debtor, he is totally disabled although he is right handed. He works with computers and because of the injury he no longer uses his left hand when working on a computer. He applied for disability benefits with the Social Security Administration. The Application is still pending. According to the Center of Rehabilitation report dated 1/17/03, his total body impairment is four (4%) percent.

The joint income tax return for the year 2001 (the year that the dissolution of marriage became final), filed by the Debtor with his current spouse, Sheila Batzek, indicated a gross taxable income of $88,608 and $1,420.00 unemployment compensation, for a grand total of $90,119.00. The return also claimed a tax refund in the amount of $15,182. (Pl.Ex. 9). Also, in the year 2001, the Debtor filed an income tax return for the State of Georgia and sought a tax refund of $5,143.23. (Pl.Ex. 9). It is admitted by the Debtor that he received both tax refunds.

Pursuant to the Final Judgment, the Debtor's retirement fund was to be split with $90,000 remaining for the Debtor and approximately $146,000 being transferred to Ms. Batzek. *See* Final Judgment, "Retirement" section. (Pl.Ex. A). However, the Debtor's 2001 tax return indicates that there was an "alimony payment" of $151,071.00 made to Ms. Batzek. Although the recipient of the payment described as " alimony" is not identified by name but only by a social security number, it is without dispute that the number is the social security number of Ms. Batzek.

The evidence is not contradicted that Ms. Batzek never received any "alimony payment" from the Debtor. (Pl.Ex. 9). Since the Debtor retained his Fidelity Rollover IRA Account, in the amount of $96,262.33; he has subsequently withdrawn $10,000, and therefore, the balance is reduced to approximately $86,200. (Pl. Exhs. 6 & 12).

Ms. Batzek has no dependents. She used to work as a hairdresser or a florist. Currently she is working for Wal–Mart Associates and earns $7.57 per hour or $314.00 every two weeks. Her total earning for the year 2002 was $9,143.22. In addition to the former marital home, the Van and some personal property, it is without dispute that she was also awarded by the Final Judgment the sum of $146,000 out of the Debtor's retirement account.

The foregoing are the relevant facts established at the final evidentiary hearing and based on same the ultimate issue of the viability of the two claims of nondischargeability based on 11 U.S.C. § 523(a)(5) (Count I) and on 11 U.S.C. § 523(a)(15) (Count II).

Throughout the history of American Bankruptcy Jurisprudence, family support obligations have been excepted from the protection of the bankruptcy discharge. The duty to support a former spouse or children has always been an important and paramount concern of Congress. Whether a duty to support exists depends on state law but whether an obligation based on the duty is nondischargeable is determined by federal law.

Very few if any Section of the Code received such a wide differing interpretation by the courts than 11 U.S.C. § 523(a)(5) and (a)(15). Some confine the inquiry to whether the obligation is based on "duty" and if so, the obligation is nondischargeable. The majority of state courts focused on the form of the obligation as well as the intent of the parties and the intent of the court.

As noted earlier, whether a particular support obligation is nondischargeable is determined by federal standard. *Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989); *In re Harrell*, 754 F.2d 902 (11th Cir.1985). Unfortunately, the federal standard is far less than clear and hardly furnishes a defined bright line designed to furnish uniform approach in dealing with this very important and frequently litigated issue in the bankruptcy courts. Some courts considered the intent of the parties as a major, if not the only factor to be considered. *In re Gianakas*, 917 F.2d 759 (3rd Cir.1990). Moreover, it is the intent of the parties at the time of the settlement and not the present circumstances of the parties. *In re Gianakas, supra; In re Harrell, supra.* The minority position is advanced by the Sixth Circuit in the case of *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). Under this approach, the court will consider whether the award of support under present circumstances of the parties becomes unreasonable as to loose its support characteristic.

It is now generally recognized that in the absence of a clear indication of the intent of the parties, the courts will consider a set of factors enunciated by courts. *In re Harrell, supra.* The list of factors is expansive and some courts have emphasized some of the critical factors as follows:

(1) whether the obligation under consideration is subject to contingencies such as death or remarriage;

(2) whether the payment was fashioned in order to balance disparate incomes of the parties;

(3) whether the obligation is payable in installments or in a lump sum;

(4) whether there are minor children involved in the marriage requiring support;

(5) the respective physical health of the spouse, and the level of education;

(6) whether, in fact, there was need for support at the time of the circumstances of the particular case;

(7) whether the obligation imposed is enforced by contempt proceeding (alimony or by levy and execution, or just a money judgment); and

(8) whether the obligation is fixed and final (not alimony) or subject to readjustment, either upward or downward, depending on the changed circumstances of the parties.

*In re Bowsman,* 128 B.R. 485, 487 (Bankr. M.D.Fla.1991).

Additionally, courts accord a deference to the express intention of the parties stated in the stipulation entered into at the time of the stipulation as executed concerning the nature of the obligation. *Cummings v. Cummings,* 244 F.3d 1263 (11th Cir.2001). The burden to prove this intent is by a preponderance of the evidence. *Cummings, supra.*

In *Cummings,* the Eleventh Circuit held that although the factors cited above are relevant to a court's inquiry, "the touchstone for dischargeability under § 523(a)(5) is the intent of the parties. In determining whether a particular obligation is in the nature of support, '[a]ll evidence, direct or circumstantial, which tends to illuminate the parties subjective intent is relevant.'" *Cummings, supra* at 1266 (citations omitted).

With respect to the facts in this case, in the case of *Gianakas,* the facts bear a striking similarity. The Court of Appeals in *Gianakas* found that payment of the second mortgage on a former marital residence, pursuant to settlement

agreement was nondischargeable as being in the nature of alimony, maintenance or support. See also, *In re Hill,* 133 B.R. 126 (Bankr.N.D.Ind.1989).

In light of the foregoing authority, this Court is satisfied that the evidence presented more than demonstrates that the obligations owed to Ms. Batzek are in the nature of alimony, maintenance or support and are nondischargeable.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the obligations are found to be in the nature of support and therefore nondischargeable. In light of the foregoing, it is unnecessary to rule on Count II, Section 523(a)(15). It is further

ORDERED, ADJUDGED AND DECREED that a separate final judgment shall be entered in favor of Ms. Batzek and against the Debtor with respect to the obligations found to be nondischargeable.